# Exhibit A



FILED

2021 OCT -1 PM 3:03

HOWARD G. HOGAN

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

KNOX TL LOT ACQUISITION, LLC and
MILLSTONE PARTNERS, LLC,

      Plaintiffs,

v.

      Docket No. 203341-3

FIRST AMERICAN TITLE INSURANCE
COMPANY,

      Defendant.

### SUMMONS

To the above-named Defendant: <u>First American Title Insurance Company</u>:

You are hereby summoned to defend a civil action filed against you in the Chancery Court for Knox County, Tennessee. Your defense must be made within thirty (30) days from the date this summons and complaint are served upon you, exclusive of the day of service. You must file your defense with the Clerk and Master of Knox County Chancery Court and send a copy to the plaintiff or to the plaintiff's attorney: <u>C. Scott Taylor, Esq., Bernstein Stair & McAdams LLP, whose address is 116 Agnes Road, Knoxville, Tennessee 37919</u>. If you fail to timely defend this action, judgment by default can be rendered against you for the relief demanded in the complaint.

      **ISSUED** this __1__ day of October 2021.

      WITNESS, Howard G. Hogan, Clerk and Master of said Court, at office in Knoxville, Tennessee.

HOWARD G. HOGAN, CLERK AND MASTER

By: _____
     Deputy Clerk and Master

**ADA**
FOR ASSISTANCE CALL
865-215-3641
Elizabeth.Golem@knoxcounty.org



## NOTICE TO DEFENDANT(S):

To the defendant (s): Tennessee law provides a Ten Thousand Dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek counsel of a lawyer. T.C.A. § 26-2-114.

## SERVICE INFORMATION

To the process server: <u>First American Title Insurance Company</u> can be served through its registered agent for service of process:

**Corporation Service Company**
**2908 Poston Avenue**
**Nashville, Tennessee 37203-1312**

## RETURN

I received this summons on the _____ day of _____ 2021.

I hereby certify and return that on the _____ day of _____ 2021, I:

[ ]     served this summons and complaint on the Defendant in the following manner: _____.

[ ]     failed to serve this summons within 30 days after its issuance because: _____.

## Process Server

Name: _____

Address: _____

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE 3: 03

KNOX TL LOT ACQUISITION, LLC and
MILLSTONE PARTNERS, LLC,

    Plaintiffs,

v.

Docket No. 203341-3

FIRST AMERICAN TITLE INSURANCE
COMPANY,

    Defendant.

## COMPLAINT

Plaintiffs, Knox TL Lot Acquisition, LLC ("KNOX TL") and Millstone Partners, LLC ("MILLSTONE") (collectively, "Plaintiffs"), by and through counsel, file this their Complaint against First American Title Insurance Company ("FATIC") for breach of contract.

In support of its causes of action against this Defendant, the Plaintiffs would respectfully show unto this Court as follows:

## PARTIES

1.    Plaintiff KNOX TL is a Tennessee limited liability company registered to do business in the State of Tennessee, with offices located in Knox County, Tennessee.

2.    Plaintiff MILLSTONE is a Tennessee limited liability company registered to do business in the State of Tennessee, with offices located in Knox County, Tennessee.

3.    Defendant FATIC is a foreign insurance company authorized to do business in the State of Tennessee. It may be served through the Tennessee Department of Commerce and Insurance, Attn: Service of Process, 500 James Robertson Parkway, Nashville, Tennessee 37243.

## JURISDICTION AND VENUE

4.    Personal jurisdiction over Defendant FATIC is proper pursuant to the Tennessee's long-arm statute codified at Tenn. Code Ann. § 20-2-201.

5.    Subject matter jurisdiction is properly exercised in this matter by this Court pursuant to Tenn. Code Ann. § 16-11-101 *et seq.*

6.    Venue is proper in Knox County, Tennessee because the insurance contracts at issue were procured and executed in Knox County, Tennessee. Additionally, the acts, representations, and omissions of the parties at issue all occurred in Knox County, Tennessee.    Accordingly, venue is appropriate in Knox County, Tennessee pursuant to Tenn. Code Ann. § 20-4-101 *et seq.*

## FACTS

### THE KNOX TL CLAIM

7.    In 2017, Plaintiff KNOX TL approached East Tennessee Title Insurance Agency ("ETTIA") concerning the procurement of title insurance policies related to the purchase and development of real property located in Knox County, Tennessee.

8.    During the communications regarding the procurement of a title insurance policy, Knox TL communicated to ETTIA the plans for land development and sale.

9.    On or about December 11, 2017, FATIC, by and through East Tennessee Title Insurance Agency, Inc. ("ETTIA"), issued to KNOX TL an ALTA Owner's Policy of Title Insurance, Policy No. 5011400-1919688e in the insured amount of Two Million and 00/100 Dollars ($2,000,000.00). This Title Policy is attached hereto as **Exhibit A**.

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 5 of 127
PageID #: 12

10. On or about December 17, 2017, KNOX TL acquired certain real property located in Knox County, Tennessee, the legal description of which is attached hereto as **Exhibit B** (the "Property").

11. Upon its purchase of the Property, KNOX TL began the process of development of the Property for the purpose of constructing residential dwellings, which KNOX TL would then sell to third parties.

12. On or about August 14, 2018, a lawsuit was filed in the Chancery Court for Knox County, Tennessee, styled Alexandra Detrana, *et al.* v. Charles Edward Daniel, *et. al.*, bearing Docket No. 196470-2. A copy of the Summons and Complaint is attached hereto as **Exhibit C**. (the "Detrana lawsuit").

13. On or about August 22, 2018, KNOX TL was served with the Summons and Complaint filed in the Detrana lawsuit.

14. The Detrana lawsuit alleged, in part, that KNOX TL (and later alleged MILLSTONE) and/or its assigns should be prohibited from developing the real property for which it owned and that the plan of development of KNOX TL violated certain restrictive covenants imposed on the property as the result of prior deeds of conveyance in the chain of title.

15. Upon being served with the Summons and Complaint, KNOX TL promptly gave notice of the Detrana lawsuit to FATIC, and filed Claim No. 1809205324 against Policy No. 5011400-1919688e, requesting defense in the Detrana lawsuit (the "KNOX TL Claim"). .

16. On August 31, 2021, Myron C. Ely of ETTIA sent to FATIC'd claims intake center notice of KNOX TL's claim, copying Mark Rosser. FATIC's Vice President and

Case 3:21-cv-00374-JRG-DCP   Document 1-1   Filed 11/04/21   Page 6 of 127
PageID #: 13

Tennessee State Counsel. A copy of the August 31, 2021 letter is attached hereto as **Exhibit D**.

17. On or about September 11, 2018, FATIC transmitted correspondence to Linda Garrison of ETTIA acknowledging the receipt of Claim information on August 31, 2018.

18. After having received no response from FATIC regarding the results of its investigation whether it would provide defense for KNOX TL in the Detrana lawsuit, and in an effort to protect itself and to mitigate damages that it might incur, KNOX TL independently retained Knoxville attorney Lewis S. Howard. Jr. and the law firm of Howard & Howard, P.C. to avoid a default judgment being entered against KNOX TL.

19. On or about September 13, 2018, KNOX TL, by and through its retained counsel, filed an Answer in the Detrana lawsuit.

20. On or about October 11, 2018, FATIC, by and through its Claims Counsel, Jessica L. Ladwig, responded to Scott Smith of KNOX TL concerning the KNOX TL Claim. FATIC's response is attached hereto as **Exhibit E**.

21. In FATIC's response to the KNOX TL Claim, dated October 11, 2018, FATIC indicated it had retained Nashville attorney Erika Barnes and the law firm of Stites & Harbison PPLC to defend KNOX TL in the Detrana lawsuit.

22. The response by FATIC to the KNOX TL Claim, dated October 11, 2018, was delivered after KNOX TL had retained independent counsel, and well after the thirty (30) days to file an answer or responsive pleading had elapsed.

23. FATIC, instead of promptly providing a defense on behalf of KNOX TL, delayed and failed to timely provide a defense for KNOX TL, in breach of its obligation to defend KNOX TL under the subject insurance policy.

## JOINDER OF MILLSTONE

24. On or about April 15, 2019, Plaintiff MILLSTONE acquired a portion of the Property owned by KNOX TL for the purpose of developing residential properties.

25. On or about July 24, 2019, a Second Amended Complaint was filed in the Detrana lawsuit, naming MILLSTONE as a defendant in that action, as MILLSTONE had acquired certain properties from KNOX TL during the pendency of the Detrana lawsuit.

26. The allegations of the Detrana lawsuit alleged that MILLSTONE, like its assignor, KNOX TL, should be prohibited from developing real property which it owned and that the plan of development violated certain restrictive covenants imposed on the Property as the result of prior deeds of conveyance in the chain of title.

## SETTLEMENT DISCUSSIONS

27. In an effort to bring the Detrana lawsuit to a swift resolution, and to avoid the prospect of continued litigation and appeals, KNOX TL, by and through its counsel, worked toward a global settlement of all claims.

28. During the course of such settlement discussions, KNOX TL, by and through its counsel, was in regular contact with FATIC, by and through its counsel, Ms. Ladwig.

29. During the course of such settlement discussions, FATIC was fully informed of the terms of the proposals for settlement and related such proposed settlement terms.

30. On or about July 25, 2019, in response to an inquiry made by FATIC, counsel for KNOX TL informed FATIC that the proposed terms of the settlement were that the insurance companies (including FATIC and others), would contribute a total of $300,000.00 to the final settlement.

31. On or about July 26, 2019, in response to KNOX TL's request for contribution to the settlement, FATIC responded that it would contribute $150,000.00 toward final settlement in exchange for a full release from KNOX TL.

32. On or about July 26, 2019, counsel for KNOX TL and MILLSTONE, Mr. Howard, informed Ms. Ladwig that it was necessary for the settlement proposal to work that KNOX TL and MILLSTONE had to make sure that FATIC would insure titles out of MILLSTONE to buyers of the developed properties.

33. On or about July 26,2019, Ms. Ladwig responded to Mr. Howard that FATIC had ordered a title search to confirm all owners that derived titles from the deeds related to the MILLSTONE properties sought to be further insured.

34. On August 6, 2019, Mr. Howard notified Ms. Ladwig that attorney Scott McCulley, who had been hired by FATIC to perform such title search, had not yet begun the title search to determine the names of the additional parties to execute the demanded release.

35. On August 22, 2019, Scott Smith sent a claim demand via email to Ms. Ladwig in the amount of $380,000.00.

36. On August 22, 2019, in response to the claim by Scott Smith, Ms. Ladwig stated that the $150,000.00 FATIC agreed to contribute toward the proposed settlement concerned only the claims of KNOX TL, and that FATIC agreed to do so in exchange for

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 9 of 127
PageID #: 16

a full release. Ms. Ladwig further stated, "the joinders agreed to be obtained by the Plaintiffs are sufficient for First American to insure over these issues for the properties going forward." See correspondence, dated August 22, 2019, attached hereto as **Exhibit F**.

37.    In fact, no monies were paid by FATIC on behalf of KNOX TL toward the resolution of any settlement or otherwise.

38.    FATIC failed to indemnify KNOX TL in breach of its obligation to indemnify KNOX TL in breach of the subject insurance policy.

<u>THE MILLSTONE CLAIMS</u>

39.    FATIC issued a series of title insurance policies to MILLSTONE, at which time FACTIC was fully aware of the Detrana lawsuit.

40.    On or about April 15, 2019, FATIC issued to MILLSTONE real property title insurance policy 5011400-2390965e for an insured amount of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00). The title policy with its attached Schedule A describing the real property is attached hereto as **Exhibit G**.

41.    On or about June 4, 2019, FATIC issued to MILLSTONE real property title insurance policy 5011400-2432461e for an insured amount of One Hundred Eighty-Seven Thousand and 00/100 Dollars ($187,00.00). The title policy with its attached Schedule A describing the real property is attached hereto as **Exhibit H**.

42.    On or about June 4, 2019, FATIC issued to MILLSTONE real property title insurance policy 5011400-2432393e for an insured amount of One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,00.00). The title policy with its attached Schedule A describing the real property is attached hereto as **Exhibit I**.

43. On or about July 3, 2019, FATIC issued to MILLSTONE real property title insurance policy 5011400-2441774e for an insured amount of One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,00.00). The title policy with its attached Schedule A describing the real property is attached hereto as **Exhibit J**.

44. As alleged above, on July 24, 2019, MILLSTONE was joined as a defendant in the Detrana lawsuit due to its ownership of the above parcels of real property.

54. On or about August 20, 2019, MILLSTONE filed the following claims with FATIC related to the Detrana lawsuit on the associated policies (the "MILLSTONE Claims"):

    (a)    Policy No. 5011400-2390965e
                Claim No. TN-1909204688

    (b)    Policy No. 5011400-2432461e
                Claim No. TN-1909204687

    (c)    Policy No. 5011400-2432393e
                Claim No. TN-1909204686

    (d)    Policy No. 5011400-2441774e
                Claim No. TN-1909204685

55. By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204688, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage for "**all** lots shown on the recorded Plat, and the Property consists of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots." This letter is attached hereto as **Exhibit K**.

56. By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204686, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage for "**all** lots shown on the recorded Plat, and the Property consists of lots shown on the

Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots." This letter is attached hereto as **Exhibit L**.

57. By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204687, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage for "**all** lots shown on the recorded Plat, and the Property consists of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots." This letter is attached hereto as **Exhibit M**.

58. By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204685, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage for "**all** lots shown on the recorded Plat, and the Property consists of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots." This letter is attached hereto as **Exhibit N**.

59. Ultimately, no monies were paid by FATIC on behalf of MILLSTONE toward the resolution of the settlement of the Detrana lawsuit or otherwise.

60. FATIC failed to indemnify MILLSTONE in breach of its obligation to indemnify MILLSTONE in breach of the subject insurance policies. FATIC failed to honor the claims filed by MILLSTONE related to the halt of the orderly development and sale of the real property, in breach of the subject insurance policies.

## CAUSES OF ACTION

### I. KNOX TL'S CLAIM FOR BREACH OF CONTRACT AGAINST FATIC - FAILURE TO DEFEND

61. The allegations set forth in Paragraphs 1 through 60 above are hereby incorporated by reference as if fully restated herein.

Case 3:21-cv-00374-JRG-DCP     Document 1-1     Filed 11/04/21     Page 12 of 127
PageID #: 19

62. On August 14, 2018, the Detrana lawsuit was filed naming KNOX TL as a defendant.

63. On or about August 22, 2018, KNOX TL was served with the Summons and Complaint.

64. Upon being served with such Summons and Complaint, KNOX TL promptly notified FATIC.

65. After having received no response from FATIC concerning the pending lawsuit, KNOX TL, in an effort to protect its interests and mitigate damages, was forced to independently retain counsel to file a responsive pleading to the pending lawsuit and avoid entry of default judgment.

66. On or about September 13, 2018, KNOX TL, by and through its retained counsel, Lewis S. Howard Jr., filed an Answer in the pending lawsuit.

67. On or about October 11, 2018, FATIC emailed a response to KNOX TL indicating that it would take up defense of some of the claims in the lawsuit, and that it has retained Nashville attorney Erika Barnes to defend KNOX TL as to some of the claims in the Detrana lawsuit.

68. The response to the KNOX TL claim, dated October 11, 2019, was delivered to KNOX TL after it had already retained independent counsel and well after thirty (30) days to file an answer or responsive pleading had elapsed.

69. KNOX TL performed its obligations under the insurance contract by making timely and full payment of all premiums required by FATIC.

70. KNOX TL timely submitted its claims for occurrences that were covered under the insurance contract.

71. FATIC breached its duty to timely respond to and defend KNOX TL as required by the subject Policy.

72. As a result of FATIC's breach of contract, KNOX TL has been damaged in an amount to be proven at trial, but not to exceed Two Million Dollars ($2,000,000.00).

## II. KNOX TL'S CLAIM FOR BREACH OF CONTRACT AGAINST FATIC - FAILURE TO INDEMNIFY

73. The allegations set forth in Paragraphs 1 through 72 above are hereby incorporated by reference as if fully restated herein.

74. KNOX TL timely notified FATIC of the pending Detrana lawsuit, but received no response from FATIC, forcing KNOX TL to retain independent counsel to defend the lawsuit.

75. As part of its defense of such suit, KNOX TL's counsel entered into settlement discussions with the adverse parties, which was then used as a pretext by FATIC to deny coverage to KNOX TL on the basis that it was negotiating a settlement without FATIC's prior written authorization.

76. Despite having insurance coverage for up to $2,000,000.00, FATIC denied coverage for KNOX TL's claim in the amount of $380,000.00.

77. KNOX TL fulfilled its obligations under the insurance contract by making timely and full payments of all premiums required by FATIC, and by timely submitting claims for occurrences that were covered under the insurance contract.

78. FATIC failed and refused to provide title insurance coverage for the claims that were ultimately filed in the Detrana lawsuit, even though it had been paid in full for the premiums charged to KNOX TL for title coverage.

79. By FATIC's breach of its coverage obligations under the insurance contract, KNOX TL has suffered grievous consequential and incidental damages, loss of revenue and profits, and direct expenses it would not have otherwise incurred.

80. KNOX TL has been damaged by FATIC's breach of contract in an amount to be proven at trial, but not to exceed Two Million Dollars ($2,000,000.00).

## VII. MILLSTONE'S CLAIM FOR BREACH OF CONTRACT AGAINST FATIC - FAILURE TO INDEMNIFY

81. The allegations set forth in Paragraphs 1 through 80 above are hereby incorporated by reference as if fully restated herein.

82. FATIC was fully aware of the pending Detrana lawsuit at the time it issued the subject insurance policies to MILLSTONE.

83. As part of the defense of claims asserted against MILLSTONE in the Detrana litigation, MILLSTONE's counsel entered into settlement discussions with the adverse parties to reach a global settlement of all claims.

84. As part of the communications between MILLSTONE's counsel and counsel for FATIC, FATIC agreed that it would insure over the subject parcels going forward, which would have allowed MILLSTONE to close on such parcels.

85. As it became apparent that FATIC refused to honor the claim asserted by KNOX TL, MILLSTONE also filed claims on each of the policies issued to MILLSTONE by FATIC.

86. On or about August 20, 2019, MILLSTONE filed the following claims with FATIC related to the Detrana lawsuit on the associated policies (the "MILLSTONE Claims"):

(a)    Policy No. 5011400-2390965e
Claim No. TN-1909204688

(b)    Policy No. 5011400-2432461e
Claim No. TN-1909204687

(c)    Policy No. 5011400-2432393e
Claim No. TN-1909204686

(d)    Policy No. 5011400-2441774e
Claim No. TN-1909204685

87.    By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204688, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage for "all lots shown on the recorded Plat, and the Property consists of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots."

88.    By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204686, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage for "all lots shown on the recorded Plat, and the Property consists of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots."

89.    By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204687, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage for "all lots shown on the recorded Plat, and the Property consists of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots."

90.    By letter dated October 31, 2019, FATIC denied Claim No. TN-1909204685, with the given reason that Schedule B "Exceptions from Coverage" excluded coverage

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 16 of 127
PageID #: 23

for "all lots shown on the recorded Plat, and the Property consists of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots."

91. Ultimately, no monies were paid by FATIC on behalf of MILLSTONE toward the resolution of the settlement of the Detrana lawsuit or otherwise.

92. MILLSTONE performed its obligations under the insurance contracts by making timely and full payments of all premiums required by FATIC.

93. MILLSTONE timely submitted its claims for occurrences that were covered under the insurance policies.

94. FATIC failed and refused to provide title insurance coverage for the claims asserted by MILLSTONE and to indemnify MILLSTONE even though MILLSTONE fulfilled its obligations under the insurance contracts.

95. FATIC failed to indemnify MILLSTONE in breach of its obligation to indemnify MILLSTONE in breach of the subject insurance policies.

96. MILLSTONE has been damaged by FATIC's breach of contract in an amount to be proven at trial, but not to exceed Two Million Dollars ($2,000,000.00).

### PRAYER FOR RELIEF

1. That process issue and by served on the Defendant, and that the Defendant be required to answer this lawsuit within the time required by law;

2. That KNOX TL be awarded damages for breach of contract against FATIC for its failure to defend and failure to indemnify KNOX TL in an amount to be established at trial, but not to exceed $2,000,000.00;

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 17 of 127
PageID #: 24

3.     That MILLSTONE be awarded damages for breach of contract against FATIC for its failure to indemnify MILLSTONE in an amount to be established at trial, but not to exceed Two Million Dollars ($2,000,000.00);

4.     That the Plaintiffs be awarded pre-judgment and post-judgment interest;

5.     That the Plaintiffs be awarded such other, further and general relief that they show themselves entitled to upon the hearing of this cause.

Respectfully submitted this __|__ day of October 2021.

**BERNSTEIN, STAIR & McADAMS LLP**

C. Scott Taylor (BPR# 021037)
Heather G. Anderson (BPR # 019408)
Matthew T. McDonald (BPR# 033431)
116 Agnes Road
Knoxville, Tennessee 37919
(865) 546-8030
staylor@bsmlaw.com
handerson@bsmlaw.com
mmcdonald@bsmlaw.com

FILED

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

2021 OCT -1 PM 3:03

HOWARD G. HOGAN

KNOX TL LOT ACQUISITION, LLC and
MILLSTONE PARTNERS, LLC,

        Plaintiffs,

v.

        Docket No. 203341-3

FIRST AMERICAN TITLE INSURANCE
COMPANY,

        Defendant.

### COST BOND

Knox TN Lot Acquisition, LLC and Millstone Partners, LLC, as Principals, and Bernstein, Stair & McAdams LLP, as Surety, are held and firmly bound unto the Clerk of the Knox County Chancery Court, for the payment of costs awarded against the Principals pursuant to T.C.A. § 20-12-120 *et seq.* To that end we bind ourselves, our heirs, executors and administrators.

The Principals are commencing a legal proceeding in the Knox County Chancery Court. If the Principal shall pay all costs which are adjudged against him, then this obligation is void. If the Principals fail to pay, then the Surety shall undertake to pay costs adjudged against the Principals, in accordance with T.C.A. § 20-12-120, *et seq.*

**PRINCIPALS**

KNOX TN LOT ACQUISITION, LLC

By: _____

MILLSTONE PARTNERS, LLC

By: _____

**SURETY**

_____
Bernstein, Stair & McAdams LLP
116 Agnes Road
Knoxville, Tennessee 37919
By: C. Scott Taylor (#021037)

# EXHIBIT A



**First American Title™**

**Owner's Policy**

## Owner's Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

POLICY NUMBER

**5011400-1919688e**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

(Covered Risks Continued on Page 2)

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

For Reference:

File #: 16W34058
Loan #: 9659605

Issued By:

East Tennessee Title Insurance Agency, Inc.
8930 Cross Park Drive, Suite 1
Knoxville, TN 37923

(This Policy is valid only when Schedules A and B are attached)

This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form 5011400 (7-1-14)   Page 1 of 5

ALTA Owner's Policy of Title Insurance (6-17-06)

American Land Title Association

Owner's Policy
Adopted 6/17/06

## SCHEDULE A

First American Title Insurance Company
1 First American Way
Santa Ana, California 92707

File No.: 16W34058                      Policy No.: 5011400-1919688e
Address Reference: 22.35 Acres Freels Lane, Knoxville, TN 37922
Amount of Insurance: $2,000,000.00
Date of Policy: October 20, 2017 @ 8:37AM

1. Name of Insured: Knox TL Lot Acquisition LLC, a Tennessee Limited Liability Company

2. The estate or interest in the Land that is insured by this policy is: Fee Simple

3. Title is vested in: Knox TL Lot Acquisition LLC, a Tennessee Limited Liability Company

4. The Land referred to in this policy is described as follows:

SITUATED in District 6 of Knox County, Tennessee; without the corporate limits of the City of Knoxville, Tennessee, being a 22.35 acre tract of land, more or less, identified as Tract 1 on the Survey of the Daniel and Overton Property dated September 29, 2017 and prepared by Ryan S. Lynch, RLS No. 2447, Lynch Surveys, LLC, 4405 Coster Road, Knoxville, Tennessee 37912, (865) 584-2630; Project No. 3929-4, and being more particularly described as follows:

BEGINNING at an iron pin located at the intersection of the southern right-of-way of Millstone Lane and the western right-of-way of Freels Lane; thence along a curve to the right having a radius of 26.00 feet, an arc length of 42.33 feet and a chord call and distance of South 85 deg. 51 min. 00 Sec. East 37.45 feet to an iron pin; thence continuing along Freels Lane the following calls and distances: South 37 deg. 20 min. 52 sec. East 62.83 feet to an iron pin; South 37 deg. 42 min. 52 sec. East 176.22 feet to an iron pin; South 30 deg. 08 min. 37 sec. East 292.20 feet to an iron pin; South 11 deg. 24 min. 25 sec. East 149.27 feet to an iron pin; South 03 deg. 29 min. 33 sec. West 62.02 feet to an iron pin; South 03 deg. 51 min. 14 sec. West 98.71 feet to an iron pin, corner to Tract 4 on the above-referenced survey; thence leaving Freels Lane and along Tract 4 the following calls and distances: North 86 deg. 13 min. 51 sec. West 146.82 feet to an iron pin; South 08 deg. 58 min. 47 sec. West 170.00 feet to an iron pin; South 75 deg. 08 min. 58 sec. East 159.28 feet to an iron pin located in the western right-of-way of Freels Lane; thence along the right-of-way the following calls and distances: South 06 deg. 18 min. 07 sec. West 66.90 feet to an iron pin; South 06 deg. 18 min. 07 sec. West 83.23 feet to an iron pin; South 01 deg. 51 min. 19 sec. East 53.29 feet to an iron pin; South 09 deg. 29 min. 03 sec. East 73.03 feet to an iron pin; South 15 deg. 00 min. 02 sec. East 76.16 feet to an iron pin; South 04 deg. 11 min. 18 sec. East 67.78 feet to an iron pin, corner to property of Cudzilo (Inst. No. 201405150064808; CLT No. 132-049.19); thence along the Cudzilo boundary the following calls and distances: South 60 deg. 13 min. 51 sec. West 244.06 feet to an iron pin; South 45 deg. 28 min. 17 sec. West 35.92 feet to an iron pin; South 52 deg. 55 min. 15 sec. West 42.22 feet to an iron pin; South 64 deg. 16 min. 28 sec. West 213.98 feet to an iron pin, corner to Tract 3 on the above referenced survey; thence along the Tract 3 boundary the following calls and distances: South 54 deg. 29 min. 58 sec. West 214.47 feet to an iron pin; North 48 deg. 57 min. 47 sec. West 147.17 feet to an iron pin; South 61 deg. 17 min. 52 sec. West 674.93 feet to an iron pin located in the boundary of property of Rogers (Deed Book 1977, page 106; CLT No. 144/012) thence along the Rogers

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND-TITLE
ASSOCIATION

boundary and boundary of property of Smith (Inst. No. 20010111004578; CLT No. 132-046.02) North 43 deg. 35 min. 48 sec. West 316.85 feet to an iron pin, corner to Tract 2 on the above-referenced survey; thence along the Tract 2 boundary the following calls and distances: North 51 deg. 41 min. 43 sec. East 448.56 feet to an iron pin; South 47 deg. 18 min. 34 sec. East 163.06 feet to an iron pin; North 56 deg. 30 min. 39 sec. East 217.48 feet to an iron pin located in the boundary of property of Schwarzenberg (Deed Book 2223, page 1209; CLT No. 132-009); thence along the Schwarzenberg boundary South 44 deg. 10 min. 57 sec East 58.26 feet to an iron pin; thence continuing along the Schwarenberg boundary and the boundary of property of Gorney (Inst. No. 200707130004098; CLT No. 132-050.02 North 45 deg. 30 min. 13 sec. East 571.28 feet to an iron pin; thence continuing along the Gorney boundary North 44 deg. 24 min. 43 sec. West 294.27 feet to an iron pin, corner to property of Campbell (Inst. No. 201109270016620; CLT No. 132-049.01); thence along the Campbell boundary and the boundary of property of Detrana (Inst. No. 201606100072120; CLT No. 132-049.12 North 43 deg. 51 min. 19 sec. East 500.15 feet to an iron pin, thence continuing along the Detrana boundary North 44 deg. 23 min. 55 sec. West 406.45 feet to an iron pin located in the southeastern right-of-way of Millstone Lane; thence along the right-of-way North 45 deg. 38 min. 52 sec. East 351.12 feet to an iron pin, the point of BEGINNING.

Being subject to 25 feet wide Access Easement along southwest boundary of subject property, as shown on survey of Ryan S. Lynch, RLS No. 2447, Lynch Surveys, LLC, 4405 Coster Road, Knoxville, Tennessee 37912, (865) 584-2630; Project No. 3929-4.

BEING the same property conveyed to Knox TL Lot Acquisition LLC, a Tennessee Limited Liability Company, by Deed dated October 19, 2017, of record in Instrument No. 201710200024926, in the Register's Office for Knox County, Tennessee.

## SCHEDULE B EXCEPTIONS FROM COVERAGE

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


AMERICAN.
LAND·TITLE
ASSOCIATION

File No. 16W34058                          Policy No. 5011400-1919688e

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

1. Rights or claims of parties in possession not shown by the public records;

2. Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records;

3. Taxes of special assessments which are not shown as existing liens by the public records;

4. Any encroachments, encumbrance, violation, variation, or adverse circumstances affecting the Title that should be disclosed by an accurate and complete land survey of the Land.

5. If improvements are completed after January 1 of any year, and the law, pursuant to TCA 67-5-509 and TCA 67-5-603, requires supplement assessment for the year in which improvements are completed, the company assumes no liability for taxes assessed by correction or supplemental assessment.

6. Taxes for the year 2018 and subsequent years which are a lien but not yet due or payable.

7. Trust Deed dated October 19, 2017, executed by Knox TL Lot Acquisition LLC, to Home Federal Bank of Tennessee, of record in Instrument No. 201710200024926, in the Register's Office for Knox County, Tennessee, which states that it secures a debt in the original sum of $3,200,000.00.

8. Restrictions of record in Deed Book 1538, page 448, and Deed Book 1567, page 101, in the Register's Office for Knox County, Tennessee, but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial statue or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or 9bA) relates to handicap but does not discriminate against handicapped persons.

9. Part of subject property set forth on plat of boundary survey of the Charles Edward Daniel Properties at Plat Cabinet N, Slide 262B, in the Register's Office for Knox County, Tennessee.

10. Charter Rights of Southern Railway, its successors and assigns, along the southern boundary of subject property.

11. Agricultural Application for Greenbelt taxes at Deed Book 2157, page 151 (CLT No. 132-049.09), in the Register's Office for Knox County, Tennessee.

12. Part of subject property shown as Lot 12R on the Plat of Charles E. Daniel and William O. Walter III and Lisa B. Walter Properties, of record in Instrument No. 200805120085262, in the Register's Office for Knox County, Tennessee, which plat shows the following: a. Minimum building set back line of 40 feet front, 10 feet side and 35 feet, and b. Utility and drainage easement of 10 feet inside all exterior lot lines, 5 feet each side all interior lot lines, and c. AT&T and KUB retain rights in existing facilities.

13. Utility Easement dated October 18, 2011 from Charles Edward Daniel to First Utility District, of record at Instrument No. 201110210021726, in the Register's Office for Knox County, Tennessee

14. Part of subject property appears as Lots 11A and 11B on plat of Property of Harold McLeod, which plat shows the following: a. Utility and drainage easement of 10 feet, along all lot lines. b.

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


Minimum building set back line of 40 feet front. c. Drainage ditch along southern boundary.

15. Subject to proposed 25 foot Access Easement along western boundary of Tract 1, as shown on survey of Lynch Surveys, LLC, dated September 29, 2017, Project No. 3929-4.

Pending disbursement of the full proceeds of the loan secured by the Deed of Trust insured, this policy only insures to the amount actually disbursed, but increases as the proceeds are disbursed, pursuant to a legal obligation to disburse, up to the face amount of the policy. Such increase in amount shall not change the date of the policy unless such change is specifically made by written endorsement.

All matters shown on survey of Ryan Lynch, Surveyor.

Note: Item 1-4 above are hereby deleted.

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a)  the occupancy, use, or enjoyment of the Land;
   (b)  the character, dimensions, or location of any improvement erected on the Land;
   (c)  the subdivision of land; or
   (d)  environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a)  as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b)  because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
       (i)   to be timely, or
       (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.


## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
       (i)    the occupancy, use, or enjoyment of the Land;
       (ii)   the character, dimensions, or location of any improvement erected on the Land;
       (iii)  the subdivision of land; or
       (iv)   environmental protection;
       or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

Case 3:21-cv-00374-JRG-DCP     Document 1-1     Filed 11/04/21     Page 26 of 127
PageID #: 33

## 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

    (i) The term "Insured" also includes

        (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

        (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

        (C) successors to an Insured by its conversion to another kind of Entity;

        (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

            (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

            (2) if the grantee wholly owns the named Insured,

            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

    (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

## 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as Insured, or to prevent or reduce loss or damage to the Insured. The Company may take any

Case 3:21-cv-00374-JRG-DCP     Document 1-1     Filed 11/04/21     Page 27 of 127
PageID #: 34

appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.
To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and

expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.
Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 28 of 127
PageID #: 35

Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as Insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of those rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving those rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the

Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.

**STATE OF TN**
**COUNTY OF Knox**

## VALUATION AFFIDAVIT

I, or wo, hereby swear or affirm that, to the best of Affiant's knowledge, information, and belief, the actual consideration for this transfer or value of the property transferred, whichever is greater is $2,000,000.00, which amount is equal to or greater than the amount which the property transferred would command at a fair and voluntary sale.

_____
Affiant

Sworn to and subscribed before me this 19th day of October, 2017.

_____
Notary Public

My Commission Expires: 10/31/2020

THE PREPARER OF THIS DEED MAKES NO REPRESENTATION AS TO THE STATUS OF THE TITLE TO THE PROPERTY DESCRIBED HEREIN. THIS DEED HAS BEEN PREPARED SOLELY FROM INFORMATION FURNISHED TO THE PREPARER WHO MAKES NO REPRESENTATION OTHER THAN THAT IT HAS BEEN ACCURATELY TRANSCRIBED FROM INFORMATION PROVIDED.

Page 4 of 6
201710200024926

**Exhibit "A" Legal Description Attached**

SITUATED in District 6 of Knox County, Tennessee, without the corporate limits of the City of Knoxville, Tennessee, being a 22.35 acre tract of land, more or less, identified as Tract 1 on the Survey of the Daniel and Overton Property dated September 29, 2017 and prepared by Ryan S. Lynch, RLS No. 2447, Lynch Surveys, LLC, 4405 Coster Road, Knoxville, Tennessee 37912, (865) 584-2630; Project No. 3929-4, and being more particularly described as follows:

BEGINNING at an iron pin located at the intersection of the southern right-of-way of Mill Stone Lane and the western right-of-way of Freels Lane; thence along a curve to the right having a radius of 25.00 feet, an arc length of 42.33 feet and a chord call and distance of South 85 deg. 51 min. 00 Sec. East 37.45 feet to an iron pin; thence continuing along Freels Lane the following calls and distances: South 37 deg. 20 min. 52 sec. East 62.83 feet to an iron pin; South 37 deg. 42 min. 52 sec. East 175.22 feet to an iron pin; South 30 deg. 08 min. 37 sec. East 292.20 feet to an iron pin; South 11 deg. 24 min. 25 sec. East 149.27 feet to an iron pin; South 03 deg. 29 min. 33 sec. West 62.02 feet to an iron pin; South 03 deg. 51 min. 14 sec. West 98.71 feet to an iron pin, corner to Tract 4 on the above-referenced survey; thence leaving Freels Lane and along Tract 4 the following calls and distances: North 86 deg. 13 min. 51 sec. West 146.82 feet to an iron pin; South 08 deg. 58 min. 47 sec. West 170.00 feet to an iron pin; South 75 deg. 08 min. 58 sec. East 159.28 feet to an iron pin located in the western right-of-way of Freels Lane; thence along the right-of-way the following calls and distances: South 06 deg. 18 min. 07 sec. West 66.90 feet to an iron pin; South 06 deg. 18 min. 07 sec. West 83.23 feet to an iron pin; South 01 deg. 51 min. 19 sec. East 53.29 feet to an iron pin; South 09 deg. 29 min. 03 sec. East 73.03 feet to an iron pin; South 15 deg. 00 min. 02 sec. East 76.16 feet to an iron pin; South 04 deg. 11 min. 18 sec. East 67.78 feet to an iron pin, corner to property of Cudzilo (Inst. No. 201405150064808; CLT No. 132-049.19); thence along the Cudzilo boundary the following calls and distances: South 60 deg. 13 min. 51 sec. West 244.06 feet to an iron pin; South 45 deg. 28 min. 17 sec. West 35.92 feet to an iron pin; South 52 deg. 55 min. 15 sec. West 42.22 feet to an iron pin; South 64 deg. 16 min. 28 sec. West 213.98 feet to an iron pin, corner to Tract 3 on the above referenced survey; thence along the Tract 3 boundary the following calls and distances: South 54 deg. 29 min. 58 sec. West 214.47 feet to an iron pin; North 48 deg. 57 min. 47 sec. West 147.17 feet to an iron pin; South 61 deg. 17 min. 52 sec. West 674.93 feet to an iron pin located in the boundary of property of Rogers (Deed Book 1977, page 106; CLT No. 144/012) thence along the Rogers boundary and boundary of property of Smith (Inst. No. 200101111804578; CLT No. 132-046.02) North 43 deg. 35 min. 48 sec. West 316.85 feet to an iron pin, corner to Tract 2 on the above-referenced survey; thence along the Tract 2 boundary the following calls and distances: North 51 deg. 41 min. 43 sec. East 448.56 feet to an iron pin; South 47 deg. 18 min. 34 sec. East 163.06 feet to an iron pin; North 56 deg. 30 min. 39 sec. East 217.48 feet to an iron pin located in the boundary of property of Schwarzenberg (Deed Book 2223, page 1209; CLT No. 132-009); thence along the Schwarzenberg boundary South 44 deg. 10 min. 57 sec East 58.26 feet to an iron pin; thence continuing along the Schwarenberg boundary and the boundary of property of Gorney (inst. No. 200707130004098; CLT No. 132-050.02 North 45 deg. 30 min. 13 sec. East 571.28 feet to an iron pin; thence continuing along the Gorney boundary North 44 deg. 24 min. 43 sec. West 294.27 feet to an iron pin, corner to property of Campbell (Inst. No. 201109270016620; CLT No. 132-049.01); thence along the Campbell boundary and the boundary of property of Detrana (Inst. No. 201606100072120; CLT No. 132-049.12 North 43 deg. 51 min. 19 sec. East 500.15 feet to an iron pin, thence continuing along the Detrana boundary North 44 deg. 23 min. 55 sec. West 406.45 feet to an iron

pin located in the southeastern right-of-way of Millstone Lane; thence along the right-of-way North 45 deg. 38 min. 52 sec. East 351.12 feet to an iron pin, the point of BEGINNING.

Being subject to 25 feet wide Access Easement along southwest boundary of subject property, as shown on survey of Ryan S. Lynch, RLS No. 2447, Lynch Surveys, LLC, 4405 Coster Road, Knoxville, Tennessee 37912, (865) 584-2630; Project No. 3929-4.

BEING part of the same property conveyed to Charles Edward Daniel and Thomas J. Overton, by Warranty Deed dated August 13, 2015, of record in Instrument No. 201508240012269 and Warranty Deed dated August 12, 2015, of record in Instrument No. 201508240012270, in the Register's Office for Knox County, Tennessee.



Page: 5 OF 5
201710200024926

# WARRANTY DEED

Prepared by:
East Tennessee Title Insurance Agency, Inc.
8930 Cross Park Drive, Suite 1, Knoxville, TN 37923

*Sherry Witt*
## Register of Deeds
## Knox County

| Owner's Name/ Address: | Property Address: | Send Tax Bill to: |
|---|---|---|
| Knox TL Lot Acquisition LLC<br>405 Montbrook Lane<br>Knoxville, TN 37919<br>File # 16W34058 | 22.35 Acres Freels Lane<br>Knoxville, TN 37922 | Knox TL Lot Acquisition LLC<br>405 Montbrook Lane<br>Knoxville, TN 37919 |

Pt of
132 049.09
132 049.17
132 049.18

**Map Parcel Number: Part of Parcel 132-049.09, Parcel 132-049.17, Parcel 132-049.18**

---

THIS INDENTURE, made this 18th day October, 2017, by and between

**Charles Edward Daniel and Thomas J. Overton**

party of the first part, and

**Knox TL Lot Acquisition, LLC, a Tennessee Limited Liability Company**

party of the second part,

COUNTERSIGNED
KNOX COUNTY PROPERTY ASSESSOR

OCT 20 2017

JOHN R. WHITEHEAD
BY

WITNESSETH: That for and in consideration of Ten Dollars ($10.00), cash in hand paid, and other good and valuable considerations, the receipt of which is hereby acknowledged, the said party of the first part has granted, bargained, sold, and conveyed, and does hereby grant, bargain sell and convey unto the said party of the second part, the following described premises, to wit:

### See Exhibit "A" Legal Description Attached

THIS CONVEYANCE is made subject to all applicable restrictions, easements, and building set back lines of record in the Register's Office for Knox County, Tennessee.

First Party, Its Successors and/or Assigns, reserves a 25 feet Access Easement along the western boundary, as shown on survey of Ryan S. Lynch, RLS No. 2447, Lynch Surveys, LLC, 4405 Coster Road, Knoxville, Tennessee 37912 (865) 584-2630, Project No. 3929-4. Said Easement shall terminate upon conveyance of Tract 3 on said survey from Party of the First Part, Its Successors and/or Assigns to Party of the Second Part, Its Successors and/or Assigns.

TO HAVE AND TO HOLD the aforesaid real estate, together with all the appurtenances and hereditaments thereunto belonging or in any wise appertaining unto the said party of the second part, its heirs, or successors and assigns in fee simple forever.

And the said party of the first part for itself and for its successors does hereby covenant with the said parties of the second part, their heirs and assigns that it is lawfully seized in fee simple of the premises above conveyed and has full power, authority and right to convey the same, that said premises are free from all encumbrances except the 2017 Property taxes, which are to be prorated between the parties hereto, and which second party assumes and agrees to pay,

and that it will forever warrant and defend the said premises and the title thereto against the lawful claims of all persons whomsoever.

Whenever in this instrument a pronoun is used it shall be construed to represent either singular or plural, as the case may demand.

Knox County          Page: 1 of 6
REC'D FOR REC 10/20/2017 @ 37 22AM
RECORD FEE  $33.00
S. TAX  $0.00 T. TAX  $1,000.00

201710200024926

**IN WITNESS WHEREOF,** the party of the first part hereunder set his/her/their hands and seals the day and year first above written.

_Charles E. Daniel_
**Charles Edward Daniel**

STATE OF TENNESSEE )
COUNTY OF Knox )

Before me, the undersigned authority, a Notary Public in and for the State and County aforesaid personally appeared, Charles Edward Daniel, to me known (or proved to me on the basis of satisfactory evidence) to be the person/persons described in and who executed the foregoing instrument and acknowledged, upon oath, that he/she/they executed the same as his/her/their free act and deed.

WITNESS my hand and seal at office in said County this 19th day of October, 2017.

_Pamela R. Hood_
Notary Public

My Commission Expires: _10/31/2020_

Page 2 OF 6
2017102000024926

IN WITNESS WHEREOF, the party of the first part hereunder set his/her/their hands and seals the day and year first above written.

<u>Thomas J. Overton</u>

STATE OF COLORADO )
COUNTY OF Jefferson )

Before me, the undersigned authority, a Notary Public in and for the State and County aforesaid personally appeared, Thomas J. Overton to me known (or proved to me on the basis of satisfactory evidence) to be the person/persons described in and who executed the foregoing instrument and acknowledged, upon oath, that he/she/they executed the same as his/her/their free act and deed.

WITNESS my hand and seal at office in said County this 18th day of October, 2017.

<u>Notary Public</u>

My Commission Expires: 4-18-18

RICHARD J. GLEASON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19934001605
MY COMMISSION EXPIRES APRIL 18, 2018

Page 3 OF 6
201710200024926

# EXHIBIT B

SITUATED in District 6 of Knox County, Tennessee, without the corporate limits of the City of Knoxville, Tennessee, being a 22.35 acre tract of land, more or less, identified as Tract 1 on the Survey of the Daniel and Overton Property dated September 29, 2017 and prepared by Ryan S. Lynch, RLS No. 2447, Lynch Surveys, LLC, 4405 Coster Road, Knoxville, Tennessee 37912, (865) 584-2630; Project No. 3929-4, and being more particularly described as follows:

BEGINNING at an iron pin located at the intersection of the southern right-of-way of Mill Stone Lane and the western right-of-way of Freels Lane; thence along a curve to the right having a radius of 25.00 feet, an arc length of 42.33 feet and a chord call and distance of South 85 deg. 51 min. 00 Sec. East 37.45 feet to an iron pin; thence continuing along Freels Lane the following calls and distances: South 37 deg. 20 min. 52 sec. East 62.83 feet to an iron pin; South 37 deg. 42 min. 52 sec. East 175.22 feet to an iron pin; South 30 deg. 08 min. 37 sec. East 292.20 feet to an iron pin; South 11 deg. 24 min. 25 sec. East 149.27 feet to an iron pin; South 03 deg. 29 min. 33 sec. West 62.02 feet to an iron pin; South 03 deg. 51 min. 14 sec. West 98.71 feet to an iron pin, corner to Tract 4 on the above-referenced survey; thence leaving Freels Lane and along Tract 4 the following calls and distances: North 86 deg. 13 min. 51 sec. West 146.82 feet to an iron pin; South 08 deg. 58 min. 47 sec. West 170.00 feet to an iron pin; South 75 deg. 08 min. 58 sec. East 159.28 feet to an iron pin located in the western right-of-way of Freels Lane; thence along the right-of-way the following calls and distances: South 06 deg. 18 min. 07 sec. West 66.90 feet to an iron pin; South 06 deg. 18 min. 07 sec. West 83.23 feet to an iron pin; South 01 deg. 51 min. 19 sec. East 53.29 feet to an iron pin; South 09 deg. 29 min. 03 sec. East 73.03 feet to an iron pin; South 15 deg. 00 min. 02 sec. East 76.16 feet to an iron pin; South 04 deg. 11 min. 18 sec. East 67.78 feet to an iron pin, corner to property of Cudzilo (Inst. No. 201405150064808; CLT No. 132-049.19); thence along the Cudzilo boundary the following calls and distances: South 60 deg. 13 min. 51 sec. West 244.06 feet to an iron pin; South 45 deg. 28 min. 17 sec. West 35.92 feet to an iron pin; South 52 deg. 55 min. 15 sec. West 42.22 feet to an iron pin; South 64 deg. 16 min. 28 sec. West 213.98 feet to an iron pin, corner to Tract 3 on the above referenced survey; thence along the Tract 3 boundary the following calls and distances: South 54 deg. 29 min. 58 sec. West 214.47 feet to an iron pin; North 48 deg. 57 min. 47 sec. West 147.17 feet to an iron pin; South 61 deg. 17 min. 52 sec. West 674.93 feet to an iron pin located in the boundary of property of Rogers (Deed Book 1977, page 106; CLT No. 144/012) thence along the Rogers boundary and boundary of property of Smith (Inst. No. 20010111004578; CLT No. 132-046.02) North 43 deg. 35 min. 48 sec. West 316.85 feet to an iron pin, corner to Tract 2 on the above-referenced survey; thence along the Tract 2 boundary the following calls and distances: North 51 deg. 41 min. 43 sec. East 448.56 feet to an iron pin; South 47 deg. 18 min. 34 sec. East 163.06 feet to an iron pin; North 56 deg. 30 min. 39 sec. East 217.48 feet to an iron pin located in the boundary of property of Schwarzenberg (Deed Book 2223, page 1209; CLT No. 132-009); thence along the Schwarzenberg boundary South 44 deg. 10 min. 57 sec East 58.26 feet to an iron pin; thence continuing along the Schwarenberg boundary and the boundary of property of Gorney (inst. No. 200707130004098; CLT No. 132-050.02 North 45 deg. 30 min. 13 sec. East 571.28 feet to an iron pin; thence continuing along the Gorney boundary North 44 deg. 24 min. 43 sec. West 294.27 feet to an iron pin, corner to property of Campbell (Inst. No. 201109270016620; CLT No. 132-049.01); thence along the Campbell boundary and the boundary of property of Detrana (Inst. No. 201606100072120; CLT No. 132-049.12 North 43 deg. 51 min. 19 sec. East 500.15 feet to an iron pin, thence continuing along the Detrana boundary North 44 deg. 23 min. 55 sec. West 406.45 feet to an iron

pin located in the southeastern right-of-way of Millstone Lane; thence along the right-of-way North 45 deg. 38 min. 52 sec. East 351.12 feet to an iron pin, the point of BEGINNING.

Being subject to 25 feet wide Access Easement along southwest boundary of subject property, as shown on survey of Ryan S. Lynch, RLS No. 2447, Lynch Surveys, LLC, 4405 Coster Road, Knoxville, Tennessee 37912, (865) 584-2630; Project No. 3929-4.

BEING part of the same property conveyed to Charles Edward Daniel and Thomas J. Overton, by Warranty Deed dated August 13, 2015, of record in Instrument No. 201508240012269 and Warranty Deed dated August 12, 2015, of record in Instrument No. 201508240012270, in the Register's Office for Knox County, Tennessee.

# EXHIBIT C

# IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

ALEXANDER DETRANA, )
NANCY DETRANA, )
MICHAEL CAMPBELL, )
NOLEN CAMPBELL, )
JAMES GORNEY, )
BEVERLY GIBBONS, )
TIMOTHY GIBSON, )
SHIRLEY ANN GIBSON, )
COREY CUDZILO, )
and JESSICA CUDZILO )
)
Plaintiffs )
)
v. )   Case No. 196470-2
)
CHARLES EDWARD DANIEL, )
THOMAS J. OVERTON, )
KNOX TL LOT ACQUISITION LLC, )
and S&E PROPERTIES, LLC )
)
Defendants )

FILED
2018 AUG 14 PH 3: 58
HOWARD G. HOGAN

ADA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

## SUMMONS

To:   Knox TL Lot Acquisition LLC
c/o Jeffrey J. Wall, Registered Agent
706 Walnut Street, Suite 500
Knoxville, TN  37902

**To the above-named respondent:**

You are hereby summoned and required to serve upon Briton S. Collins, petitioner's attorney, whose address is P.O. Box 442, Knoxville, TN 37901, a copy of the defense to the complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. You will file the original pleading with the Court. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued and tested this ___14___ day of ___August___, 2018.

_____, Clerk

By: _____, Deputy Clerk

(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.)

## NOTICE

**To the respondent:**

Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must

The Americans with Disabilities Act prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit any discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the Americans with Disabilities Act, if necessary, the Tennessee Judicial Branch will provide reasonable modifications in order to access all of its programs, services and activities to qualified individuals with disabilities.

If you require a modification to access the judicial program and/or have special needs because of a qualified disability, you must submit a written Request for Modification to the Local Judicial Program ADA Coordinator listed below at least five (5) business days prior to the date of the judicial program, if possible. A form is available from the Local Judicial Program ADA Coordinator or from the Tennessee Judicial Program ADA Coordinator http://www.tsc.state.tn.us

If you need assistance, have questions or need additional information, please contact the Local Judicial Program ADA Coordinator:

> Pat Carson, Compliance Officer
> Knox County Human Resources Office
> Suite 360 City-County Building
> 400 Main Street, Knoxville, Tennessee 37902
> Voice phone: 215-2592          TTY: 215-2497

If you need assistance, have questions, or need additional information, you may also contact the Tennessee Judicial Program ADA Coordinator:

> Pamela Taylor, Manager/Coordinator
> State Judicial ADA Program
> Administrative Office of the Courts
> Nashville City Center, Suite 600, 511 Union Street
> Nashville, Tennessee 37219
> 615-741-2687          Fax: 615-741-6285

The Tennessee Judicial Branch Americans with Disabilities Act Policy Regarding Access to Judicial Programs, as well as a Request for Modification form may be found online at www.tsc.state.tn.us.

ALEXANDER DETRANA, )
NANCY DETRANA, )
MICHAEL CAMPBELL, )
NOLEN CAMPBELL, )
JAMES GORNEY, )
BEVERLY GIBBONS, )
TIMOTHY GIBSON, )
SHIRLEY ANN GIBSON, )
COREY CUDZILO, )
and JESSICA CUDZILO )
)
    Plaintiffs )
)
v. )    Case No. 19 6470 - ♂
)
CHARLES EDWARD DANIEL, )
THOMAS J. OVERTON, )
KNOX TL LOT ACQUISITION LLC, )
and S&E PROPERTIES, LLC )
)
    Defendants )

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Come the plaintiffs, Alexander DeTrana, Nancy DeTrana, Michael Campbell, Nolen Campbell, James Gorney, Beverly Gibbons, Timothy Gibson, Shirley Ann Gibson, Corey Cudzilo, and Jessica Cudzilo (collectively the "Plaintiffs"), by and through counsel, pursuant to Tenn. R. Civ. P. 57, Tenn. R. Civ. P. 65, and Tenn. Code Ann. § 29-14-101 *et seq.*, and state the following for their cause of action against the defendants, Charles Edward Daniel, Thomas J. Overton, Knox TL Lot Acquisition LLC, and S&E Properties, LLC (collectively the "Defendants"):

### PARTIES

1.    Plaintiffs Alexander DeTrana and Nancy DeTrana, husband and wife, are citizens and residents of Knox County, Tennessee. Together they own the real property located at 9314

I

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 42 of 127
PageID #: 49

Millstone Lane, Knoxville, Tennessee 37922, which is more particularly described in the deed of record as instrument number 201606100072120 in the office of the Register of Deeds of Knox County, Tennessee (the "DeTrana Property").

2.      Plaintiffs Michael Campbell and Nolen Campbell, husband and wife, are citizens and residents and Knox County, Tennessee. Together they own the real property located at 9318 Millstone Lane, Knoxville, Tennessee 37922, which is more particularly described in the deed of record as instrument number 201109270016620 in the office of the Register of Deeds of Knox County, Tennessee (the "Campbell Property").

3.      Plaintiffs James Gorney and Beverly Gibbons, husband and wife, are citizens and residents of Knox County, Tennessee. Together they own the real property located at 9322 Millstone Lane, Knoxville, Tennessee 37922, which is more particularly described in the deed of record as instrument number 200707130004098 in the office of the Register of Deeds of Knox County, Tennessee (the "Gorney/Gibbons Property").

4.      Plaintiffs Timothy Gibson and Shirley Ann Gibson, son and mother, are citizens and residents of Knox County, Tennessee. Together they own the real property located at 800 Freels Lane, Knoxville, Tennessee 37922, which is more particularly described in the deed of record as instrument number 201207310006556 in the office of the Register of Deeds of Knox County, Tennessee (the "Gibson Property").

5.      Plaintiffs Corey Cudzilo and Jessica Cudzilo, husband and wife, are citizens and residents of Knox County, Tennessee. Together they own the real property located at 829 Freels Lane, Knoxville, Tennessee 37922, which is more particularly described in the deed of record as instrument number 201405150064808 in the office of the Register of Deeds of Knox County, Tennessee (the "Cudzilo Property").

2

6. Defendant Charles Edward Daniel is an individual citizen and resident of Knox County, Tennessee who resides and may be served with process at 825 Freels Lane, Knoxville, Tennessee 37922. Together with Thomas J. Overton he owns the real property located at 803 Freels Lane, Knoxville, Tennessee 37922, which is more particularly described in the deed of record as instrument number 201508240012270 in the office of the Register of Deeds of Knox County, Tennessee, less the property conveyed to Knox TL Lot Acquisition LLC via the deed of record as instrument number 201710200024926 in the office of the Register of Deeds of Knox County, Tennessee (the "Daniel/Overton Property").

7. Defendant Thomas J. Overton is an individual citizen and resident of Jefferson County, Colorado who resides and may be served with process at 2265 Stonecrop Way, Golden, Colorado 80401. He owns the Daniel/Overton Property together with Charles Edward Daniel.

8. Defendant Knox TL Lot Acquisition LLC is a Tennessee limited liability company with its principal office in Knox County, Tennessee. It may be served with process through its registered agent, Jeffrey J. Wall, at 706 Walnut Street, Suite 500, Knoxville, Tennessee 37902. Knox TL Lot Acquisition LLC is the owner of the real property located at 825 Freels Lane, Knoxville, Tennessee 37922, which is more particularly described in the deed of record as instrument number 201710200024926 in the office of the Register of Deeds of Knox County, Tennessee (the "Knox TL Property").

9. Defendant S&E Properties, LLC is a Tennessee limited liability company with its principal office in Knox County, Tennessee. It may be served with process through its registered agent, Richard A. Sedgley, at 2923 Sutherland Avenue, Knoxville, Tennessee 37919. S&E Properties, LLC is acting as the developer of the Knox TL Property and the Daniel/Overton Property pursuant to maps, plans, and specifications that have been submitted for approval and,

3

in some cases, have been approved by the Knoxville-Knox County Metropolitan Planning Commission and the Knox County Commission.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over each of the Defendants. Charles Edward Daniel is Tennessee citizen and resident, and Knox TL Lot Acquisition LLC and S&E Properties, LLC are Tennessee limited liability companies. Thomas J. Overton, while a citizen and resident of Colorado, owns real property in Knox County, Tennessee that is the subject of this case, and thus has sufficient minimum contacts with Tennessee to justify this Court exercising personal jurisdiction over him in this case.

11.     This Court has subject matter jurisdiction over this case pursuant to Tenn. Code Ann. § 29-14-102(a), which grants courts of record within their respective jurisdictions the power to declare rights, status, and other legal relations.

12.     This Court is the proper venue for this case pursuant to Tenn. Code Ann. § 20-4-101 *et seq.*, as this case is being brought in the county where the Plaintiffs' cause of action arose, where all or a substantial part of the events or omissions giving rise to the Plaintiffs' cause of action accrued, and where all of the real property relating to this case lies.

## FACTS

13.     In the 1950s, Oscar Schwarzenberg, Sr. and his then-wife, Fannie B. Schwarzenberg, obtained title to two (2) large, contiguous parcels of property in west Knox County, Tennessee via the deeds of record at book 912, page 473, and book 993, page 71 in the office of the Register of Deeds of Knox County, Tennessee.

4

14. Beginning in the late-1960s and continuing into the 1970s, Oscar Schwarzenberg, Sr. and his new wife, Ruth M. Schwarzenberg,[1] subdivided and conveyed portions of this land as large, estate-sized lots varying in size from just over two (2) acres to over nineteen (19) acres each.

15. The DeTrana Property, Campbell Property, Gorney/Gibbons Property, Gibson Property, Cudzilo Property, Knox TL Property, and Daniel/Overton Property all derive their titles from Oscar Schwarzenberg, Sr. and Ruth M. Schwarzenberg.

16. The DeTrana Property and the Campbell Property trace their chains of title to Oscar and Ruth Schwarzenberg via the deed of record at book 1488, page 450 in the office of the Register of Deeds of Knox County, Tennessee.

17. The Gorney/Gibbons Property traces its chain of title to Oscar and Ruth Schwarzenberg via the deed of record at book 1720, page 172 in the office of the Register of Deeds of Knox County, Tennessee.

18. The Gibson Property traces its chain of title to Oscar and Ruth Schwarzenberg via the deeds of record at book 1374, page 867 and book 1538, page 448 in the office of the Register of Deeds of Knox County, Tennessee.

19. The Cudzilo Property traces its chain of title to Oscar and Ruth Schwarzenberg via the deed of record at book 1538, page 448 in the office of the Register of Deeds of Knox County, Tennessee.

20. The Knox TL Property traces its chain of title to Oscar and Ruth Schwarzenberg via the deeds of record at book 1538, page 448; book 1567, page 101; book 1491, page 479; book 1488, page 450; and book 1521, page 1086 in the office of the Register of Deeds of Knox County, Tennessee.

---

[1] Fannie B. Schwarzenberg passed away some time in the intervening period.

5

21. The Daniel/Overton Property traces its chain of title to Oscar and Ruth Schwarzenberg via the deeds of record at book 1538, page 448; book 1567, page 101; book 1491, page 479; and book 1488, page 450 in the office of the Register of Deeds of Knox County, Tennessee.

22. Oscar and Ruth Schwarzenberg had a general plan for their property, which was to create a subdivision of large, estate-sized lots with low densities.

23. In furtherance of this general plan, Oscar and Ruth Schwarzenberg included in the deeds of conveyance for many of their lots restrictive covenants imposing certain maximum densities and minimum building setbacks.

24. Oscar and Ruth Schwarzenberg intended for the restrictive covenants in their deeds of conveyance to benefit all the properties they conveyed to protect and further their general plan of development.

25. Until recently, the properties conveyed by Oscar and Ruth Schwarzenberg (including the DeTrana Property, Campbell Property, Gorney/Gibbons Property, Gibson Property, Cudzilo Property, Knox TL Property, and Daniel/Overton Property) were owned and maintained in conformity with the restrictive covenants in the deeds of conveyance from Oscar and Ruth Schwarzenberg.

26. Now, however, the Defendants have proposed and are in the process of implementing a plan of development for the Knox TL Property and the Daniel/Overton Property that is inconsistent with the general plan of Oscar and Ruth Schwarzenberg and in direct violation of restrictive covenants imposed on those properties by the deeds of conveyance from Oscar and Ruth Schwarzenberg described below.

6

27. The Knox TL Property and the Daniel/Overton Property are both made up of portions of several separate tracts of property that trace their chains of title to Oscar and Ruth Schwarzenberg, and specifically to deeds of conveyance from Oscar and Ruth Schwarzenberg that contain express restrictive covenants.

28. Both the Knox TL Property and the Daniel Overton Property contain portions of the property conveyed by the deed of record at book 1538, page 448, in which Oscar and Ruth Schwarzenberg conveyed one parcel of property encompassing 5.85 acres and another parcel of property encompassing approximately 3.5 acres as described therein, both subject to the following restrictions:

> IT IS AGREED that said property will be restricted as follows: No house will be built on any part of subject property containing less than three acres, and further than no part of subject property may at any time be used for dog kennels for hire and no animals may be kept or breed for commercial purposes.

29. Both the Knox TL Property and the Daniel/Overton Property contain portions of the property conveyed by the deed of record at book 1567, page 101, in which Oscar and Ruth Schwarzenberg conveyed a 19.32-acre parcel of property as described therein, subject to the following restrictions:

> SUBJECT to deed restriction limiting one dwelling units to lots containing at least three (3) acres and prohibiting dog kennels or commercial purposes or any other animals raised on a commercial basis.

30. Both the Knox TL Property and the Daniel/Overton Property contain portions of the property conveyed by the deed of record at book 1491, page 479, in which Oscar and Ruth Schwarzenberg conveyed an approximately 6.2-acre parcel of property as described therein, subject to the following restrictions:

> THIS CONVEYANCE is made subject to any single-family dwelling shall be built on not less than three acres for the next 15 years; subject to 10-foot drainage

7

and utility easement along all lot lines; and further subject to 40-foot building set-back line, both as shown on map of record and plat of survey.

31.     Both the Knox TL Property and the Daniel/Overton Property contain portions of the property conveyed by the deed of record at book 1488, page 450, in which Oscar and Ruth Schwarzenberg conveyed an 8.2-acre parcel of property as described therein, subject to the following restrictions:

> THIS CONVEYANCE is made subject to any single-family dwelling shall be built on not less than three acres for the next 15 years, subject to 10-foot drainage and utility easement along all lot lines; and further subject to 40-foot building set-back line, both as shown on map of record and plat of survey.

32.     The Defendants have recently proposed and are in the process of implementing a plan of development that would subdivide the Knox TL Property and the Daniel/Overton Property and construct dwelling units thereon at a density of three (3) dwelling units per acre, which is well in excess of the one (1) dwelling unit per three (3) acre restriction imposed on large portions of the Knox TL Property and the Daniel/Overton Property by the deeds of conveyance from Oscar and Ruth Schwarzenberg described above.

33.     The Defendants have also proposed and are in the process of implementing a plan of development that would construct dwelling units on the Knox TL Property and the Daniel/Overton Property within the forty (40) foot building setback imposed on large portions of the Knox TL Property and the Daniel/Overton Property by the deeds of conveyance from Oscar and Ruth Schwarzenberg described above.

34.     The specifics of the Defendants' proposed plan of development are matters of public record in Knox County, and may be found in the offices of the Knoxville-Knox County Metropolitan Planning Commission under file numbers 7-D-16-RZ, 8-H-16-UR, and 8-SC-16-C.

8

35. The Defendants had actual or constructive knowledge of the restrictions described above when Charles Edward Daniel, Thomas J. Overton, and Knox TL Lot Acquisition LLC purchased the Daniel/Overton Property and the Knox TL Property. The restrictions are clearly stated in the recorded deeds of conveyance from Oscar and Ruth Schwarzenberg that are in the chains of title of the Knox TL Property and the Daniel/Overton Property.

36. The DeTrana Property, Campbell Property, Gorney/Gibbons Property, and Cudzilo Property adjoin and abut the Knox TL Property. The Cudzilo Property also adjoins and abuts the Daniel/Overton Property. The Gibson Property is directly across the street from the Knox TL Property and the Daniel/Overton Property.

37. Given their close proximity to the Knox TL Property and the Daniel/Overton Property, the Plaintiffs have suffered, and will continue to suffer, irreparable damage if the Defendants are permitted to develop and improve the Daniel/Overton Property and the Knox TL Property in a manner inconsistent with the general plan of Oscar and Ruth Schwarzenberg and in direct violation of the restrictive covenants imposed on those properties by the deeds of conveyance from Oscar and Ruth Schwarzenberg described above.

## COUNT I – DECLARATORY JUDGMENT

38. The allegations in paragraphs 1 through 37 above are incorporated into this Count by reference.

39. The Plaintiffs request that the Court issue a declaratory judgment regarding the rights, status, and other legal relations of the parties with respect to the applicability and enforceability of the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above as they relate to the Knox TL Property and the Daniel/Overton Property.

9

40. Specifically, but without limitation, the Plaintiffs request that the Court declare and determine that the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above imposed on the Knox TL Property and the Daniel/Overton Property by the recorded deeds of conveyance from Oscar and Ruth Schwarzenberg are valid and enforceable, and that the portions of the Knox TL Property and the Daniel/Overton Property subject to the recorded restrictive covenants described in paragraphs 28 through 31 above cannot be developed or improved in a manner inconsistent with the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above.

### COUNT II – INJUNCTIVE RELIEF

41. The allegations in paragraphs 1 through 40 above are incorporated into this Count by reference.

42. If the Court grants the declaratory relief requested in Court I above, then the Plaintiffs request that the Court also issue a permanent injunction prohibiting the Defendants from violating the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above imposed on the Knox TL Property and the Daniel/Overton Property by the recorded deeds of conveyance from Oscar and Ruth Schwarzenberg, and from developing or improving the Knox TL Property and the Daniel/Overton Property in a manner inconsistent with the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above.

WHEREFORE, premises considered, the Plaintiffs request the following relief:

10

A. That process issue and the Defendants be required to answer this pleading within the time required by law;

B. That the Court issue a declaratory judgment regarding the rights, status, and other legal relations of the parties with respect to the applicability and enforceability of the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above as they relate to the Knox TL Property and the Daniel/Overton Property;

C. That the Court declare and determine that the general plan of Oscar and Ruth Schwarzenberg and the restrictive covenants described in paragraphs 28 through 31 above imposed on the Knox TL Property and the Daniel/Overton Property by the recorded deeds of conveyance from Oscar and Ruth Schwarzenberg are valid and enforceable, and that the portions of the Knox TL Property and the Daniel/Overton Property subject to the restrictive covenants described in paragraphs 28 through 31 above cannot be developed or improved in a manner inconsistent with the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above;

D. That the Court issue a permanent injunction prohibiting the Defendants from violating the general plan of Oscar and Ruth Schwarzenberg and the restrictive covenants described in paragraphs 28 through 31 above imposed on the Knox TL Property and the Daniel/Overton Property by the recorded deeds of conveyance from Oscar and Ruth Schwarzenberg, and from developing or improving the Knox TL Property and the Daniel/Overton Property in a manner inconsistent with the general plan of Oscar and Ruth Schwarzenberg and the recorded restrictive covenants described in paragraphs 28 through 31 above;

11

E.     That all Court costs and other allowable costs and expenses by taxed to the Defendants; and

F.     That the Court award the Plaintiffs all other relief to which they are entitled.

**THIS IS THE PLAINTIFFS' FIRST APPLICATION FOR EXTRAORDINARY RELIEF IN THIS CASE.**

Respectfully submitted.

KENNERLY, MONTGOMERY & FINLEY, P.C.

By: _____
Briton S. Collins (BPR # 030110)
*Attorney for the Plaintiffs*
550 Main Street, Suite 400
Knoxville, Tennessee 37902
(865) 546-7311

## COST BOND

We hereby acknowledge ourselves as surety for the costs in this case in accordance with Tenn. Code Ann. § 20-12-120.

KENNERLY, MONTGOMERY & FINLEY, P.C.

By: _____
Briton S. Collins

12

# EXHIBIT D



## EAST TENNESSEE TITLE INSURANCE AGENCY, INC.

8930 CROSS PARK DRIVE, SUITE 1, KNOXVILLE, TN 37923 (865) 690-7811

August 31, 2018

Via US Mail, E Mail & Fax

First American Title Insurance Company
Attention: Claims National Intake Center
1 First American Way
Santa Ana, CA 92707

Re: Policy # 5011400-1919688e

Ladies & Gentleman:

Please be advised that we have been verbally notified by the principals of TL Lot
Acquisition, LLC., the insured in the Owner's Policy, bearing No: 5011400-1919688e, of
a potential claim. Please find attached a copy of the owner's policy as well as a Complaint
for Declaratory Judgment & Injunctive Relief filed in Knox County Chancery Court. I
appreciate your time and attention to this matter. Please call with any questions or
concerns or if we can be of any assistance.

Sincerely,

Myron C. Ely

enc.
cc
Mark Rosser, Esq.
Vice President and Tennessee State Counsel
First American Title Insurance Company
800 S. Gay St., Ste. 1605
Knoxville, TN 37929

## *Serving Tennesseans Since 1943*

Representing:

First American Title Insurance Company          Westcor Land Title Insurance Company

# EXHIBIT E

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 56 of 127
PageID #: 63



**First American**
**Title Insurance Company**
CLAIMS SERVICES

Writer's Direct Dial 630-799-7020
Writer's Email jladwig@firstam.com

October 11, 2018

Scott Smith
Knox TL Lot Acquisition LLC
405 Montbrook Lane
Knoxville, TN 37919

Sent via Email: ssmith@volrealty.com

> Re:  **Policy No. 5011400-1919688e**
> Insured: Knox TL Lot Acquisition LLC
> Case No.: 196470-2
> **FATIC Claim No. TN-1809205324**

Dear Mr. Smith:

I am writing in response the above-referenced tender of claim to First American Title Insurance Company ("First American") received by East Tennessee Title Insurance Agency, Inc. Specifically, you indicate that the Insured was named in Case No. 196470-2 in Knox County Court in which Plaintiffs seek Declaratory Judgment and Injunctive Relief.

The Policy is a contract of indemnity against actual monetary loss sustained or incurred by the Insured who has suffered loss by reason of matters insured against by the Policy. The Policy provides coverage for Covered Risks subject to the Schedule B Exceptions, Exclusions from Coverage, and the Conditions, not to exceed the Amount of Insurance. Accordingly, First American Title Insurance Company ("First American") makes its coverage determination based upon the reading of the Complaint, as if the allegations therein were proven true, and the terms of the Policy.

A title insurer's duty to defend its Insured is determined by the allegations of the Complaint. If the allegations of the Complaint state a cause of action or facts that would support a cause of action within the coverage of the Policy, the insurer must defend. There is a duty to defend only when there is a potential for coverage under the Policy.

The Complaint contains two counts: (I) Declaratory Judgment, in which the Plaintiffs seek to confirm the applicability of recorded restrictive covenants against the property; and (II) Injunctive Relief, in which Plaintiffs seek to enjoin the Insured from violating the restrictive covenants at issue. The restrictive covenants cited in the Complaint include the following:

- Book 1538, Page 448, providing that no house will be built on any part of the property containing less than three acres, and that no part of the subject property may be used for dog kennels for hire and no animals may be kept or breed for commercial purposes.

27775 Diehl Road, Warrenville, IL 60555

TEL 630-799-7100 ## AX 866-606-8167

www.firstam.com



**First American
Title Insurance Company**
CLAIMS SERVICES

- Book 1567, Page 101, providing a limit of one dwelling unit to lots containing at least three acres and prohibiting dog kennels for commercial purposes or any other animals raised on a commercial basis.
- Book 1491, Page 479, providing that any single-family dwelling shall be built on not less than three acres for the next 15 years, subject to 10-foot drainage and utility easement along all lot lines, and further subject to 40-foot building set back line, both as shown on map of record and plat of survey.
- Book 1488, Page 450, providing that any single-family dwelling shall be built on not less than three acres for the next 15 years, subject to 10-foot drainage and utility easement along all lot lines, and further subject to the 40-foot building setback line, both as shown on map of record and plat of survey.

The Owner's Policy of Title Insurance provides that:

> "Subject to the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B and the Conditions, First American Title Insurance Company . . . insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of . . ."

The matters insured against by the policy are then listed as the Covered Risks. Your claim related to the litigation as to the restrictive covenants appears to be submitted under Covered Risk 2:

> "2. Any defect in or lien or encumbrance on the title."

However, Schedule B of the Policy provides that:

> "This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, which arise by reason of:
>
> 8. Restrictions of record in Deed Book 1538, Page 448, and Deed Book 1567, page 101, in the Register's Office for Knox County, Tennessee, but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons.
> 9. Part of subject property set forth on plat of boundary survey of the Charles Edward Daniel Properties at Plat Cabinet N, Slide 262B, in the Register's Office for Knox County, Tennessee.
> 12. Part of Subject property shown as Lot 12 R on the Plat of Charles E. Daniel and William O. Walter III and Lisa B. Walter Properties, of record in Instrument No. 200805120085262, in the Register's Office for Knox

27775 Diehl Road, Warrenville, IL 60555
TEL 630-799-7100 # #AX 866-606-8167

www.firstam.com



**First American**
**Title Insurance Company**

**CLAIMS SERVICES**

> *County, Tennessee, which plat shows the following: A. Minimum Building set back line of 40 feet front, 10 feet side and 35 feet, and b. Utility and drainage easement of 10 feet inside all exterior lot lines, 5 feet each side all interior lot lines, and c. AT&T retain rights in existing facilities.*
> *13. Utility Easement dated October 18, 2011 from Charles Edward Daniel to First Utility District, of record at Instrument No. 201110210021726, in the Register's Office for Knox County, Tennessee.*
> *14. Part of subject property appears as Lots 11A and 11B on plat of Property of Harold McLeod which plat shows the following: a. Utility and drainage easement of 10 feet, along all lot lines. b.Minimum building set back line of 40 feet front. c. Drainage ditch along southern boundary.*
> *15. . . . All matters shown on survey of Ryan Lynch, Surveyor.*

The restrictive covenants contained in Book 1538, Page 448 and Book 1567, Page 101, the limit on one dwelling unit to lots containing at least three acres and prohibiting dog kennels or animal breeding for commercial purposes, are specifically excepted from the coverage of the Policy by Schedule B Exception 8 noted above. As such, First American declines to provide a defense as to the restrictive covenants related to the limitation on one dwelling unit to lots containing at least three acres and prohibiting dog kennels or animal breeding for commercial purposes, and will not indemnify the Insured for any loss that may be incurred as a result of these restrictions.

The restrictive covenants contained in Book 1491, Page 479 and in Book 1488, Page 450, begin with a similar restriction on single family dwellings on at least three acres of land. While these restrictions indicate that they are limited to "the next 15 years" and as such may no longer restrict the use of the property, First American accepts the defense of the Insured as to this portion of the restriction as to the property described in Book 1491, Page 479 and in Book 1488, Page 450.

The restrictive covenants contained in Book 1491, Page 479 and in Book 1488, Page 450 then go on to include a 10-foot drainage and utility easement along all lot lines and a 40-foot building set back line that are shown on map of record and plat of survey. While the documents raised in Schedule B Exceptions 12, 13, 14, and 15 noted above do provide for a 10-foot drainage and utility easement along the lot lines of a portion of the Insured property, these documents only account for a 5-foot easement along the interior lot lines for the portion of the property not reflected in Instrument No. 200805120085262. As such, First American accepts defense of the Insured as to the additional five feet of drainage and utility easement along the interior lot lines of the property not reflected in Instrument No. 200805120085262.

As to the 40-foot setback requirement, while Instrument No. 200805120085262 provides for a 40-foot front setback for a portion of the property, and the survey of Ryan Lynch Surveyor provides for certain setbacks, the 40-foot setback was not provided for along all boundaries of the property. As such, First American accepts defense of the Insured as to the portion of the setback not included in the documents noted in Schedule B Exceptions 12 and 15.

27775 Diehl Road, Warrenville, IL 60555

TEL 630-799-7100 ┼ ┼AX 866-606-8167

www.firstam.com



**First American**
**Title Insurance Company**
CLAIMS SERVICES

First American has retained attorney Erika Barnes of Stites & Harbison PLLC to defend the Insured in the litigation only as to the covered matters noted above.

Contact information for retained counsel is:

Erika R. Barnes
Stites & Harbison PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: 615-782-2252
Fax: 615-742-0734
ebarnes@stites.com

First American's determination in connection with this claim is based upon the information and documentation available to us. Should you have additional information or documentation that you believe supports a different conclusion, please let me know and First American will reconsider this claim.

As to the covered matters, acceptance of this claim, as stated herein, is based upon the allegations in the available pleadings, those facts known by First American, and the current state of the law governing this matter. Should the circumstances leading to acceptance of this claim change, such as through amendment of the pleadings, discovery of additional facts or information during the course of the litigation, or through a change in applicable law, First American may modify its coverage determination at that time. Acceptance of this portion of your claim should not be construed as an admission by First American of liability or as a waiver by the company of the right to terminate coverage based on new facts or to either assert coverage defenses or to deny coverage in the future, which are rights expressly reserved by First American.

First American specifically reserves the following rights: (i) to continue its investigation of the claim and, if appropriate, to change its position based upon that investigation; (ii) to raise any coverage defenses that may come to light during the course of its continuing investigation; and (iii) any and all rights and coverage defenses that it has under any other applicable legal theory or principle.

Although First American has retained Erika Barnes and will pay her fees, Ms. Barnes will represent the Insured in defending the covered matters in the litigation and will have all attendant fiduciary duties related to such representation including the attorney/client privilege. Ms. Barnes will be requested to keep First American informed of developments in the litigation subject to the duties she will owe to the Insured. First American will request from Ms. Barnes copies of all pertinent pleadings, discovery, motions, briefs, etc. Any questions concerning the litigation or resolution of the claim matter should be directed to Ms. Barnes.

We would also like to remind you of the Insured's obligations under the terms of the policy, specifically Paragraph 6(a) of the Conditions, which requires cooperation in this litigation and resolution of the claim.

27775 Diehl Road, Warrenville, IL 60555
TEL 630-799-7100 # #AX 866-606-8167

www.firstam.com



**First American**
**Title Insurance Company**
CLAIMS SERVICES

Erika Barnes has not been retained to provide coverage advice to the Insured. Should the Insured wish to discuss coverage, please contact me. Should the Insured desire a legal opinion on coverage issues, it will need to retain counsel at its own expense.

Although the Company has accepted defense of the Insured as to the covered matters in the litigation, the Company has other options to resolve a claim under this policy and First American may subsequently decide to exercise its options. Those options include, but are not limited to, the option to pay or tender the amount of insurance, or to pay or settle with either the Insured or a third party. In addition to the options set forth in the Conditions of the policy, the Company may take any action that it deems appropriate to resolve the claim in order to reduce loss or damage to the Insured. The Company specifically reserves its rights to exercise these options in accordance with the terms and conditions of the policy.

If you have any questions about the content of this letter or regarding coverage under the policy, please contact me. With all correspondence about this claim, please include First American's claim reference number.

Sincerely,

*Jessica L. Ladwig*

Jessica L. Ladwig
Claims Counsel

# EXHIBIT F

next Wednesday presses the Issue.Payment is due upon the simultaneous delivery of the documents your title company required us to request.That could happen at any moment. We just learned that we had a real chance of settling this with in the last 48 hours.Absent this settlement agreement we will lose 16 closings that we have borrowed 5 million dollars to build and all of which are sold.Not to mention the other affected parties.I would hope you would not try to pressure me, I bought these policies for this very reason, please abide by your obligations and lets get this settled.

Thanks,

Scott Smith

On Thu, Aug 22, 2019 at 1:22 PM Ladwig, Jessica L. <JLadwig@firstam.com> wrote:

Mr. Smith,
This claim and any related payments deal only with the Knox TL Lot Acquisition LLC ("Knox TL") policy. Claims under any other policies will be addressed separately with the named Insureds, as previously indicated.

With regard to the Knox TL policy, the Insured agreed to a settlement with Plaintiffs without prior authorization from First American. Knox TL and the other Defendants in the litigation then made a request to First American and Fidelity to contribute a total of $300,000 toward the settlement. As reflected in the emails attached, First American and Knox TL agreed that First American would pay half of that demand, $150,000, to the Insured in exchange for a full release from Knox TL related to this matter, with the only contingency being that First American would be able to insure over the claims related to the litigation moving forward for buyers of the properties. First American has agreed, as communicated to your attorney in the email sent prior to receipt of your email below, that the joinders agreed to be obtained by the Plaintiffs for the settlement are sufficient for First American to insure over these issues for the properties going forward. In order to complete First American's obligations under the agreement for settlement as to the Knox TL policy, please provide the appropriate payee information for the $150,000 check. If Knox TL is unwilling to proceed with its agreement with First American, First American will proceed with enforcement of the agreement, through litigation if necessary.

As noted above, this settlement relates only to the existing claim under Knox TL's title insurance policy, and all other claims submitted will be addressed separately.

**Jessica Ladwig**
Claims Counsel

<Image001.jpg>
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

---

**Scott Smith** <ssmith@volrealty.com>                                          Fri, Aug 23, 2019 at 10:26 AM
To: ben testerman <supermanben@testermanrestoration.com>
Cc: "Ladwig, Jessica L." <JLadwig@firstam.com>, Lewis Howard <lewis@howardhowardlaw.com>, Eric Moseley <ericmoseley@bellsouth.net>

Jessica,

I wanted to again ask,3rd request, for a copy of what you are relying on as my "agreement" with your company for $150,000.00 and I hope you have more than an 3 week old email exchange which I would characterize as settlement

# EXHIBIT G



**First American Title™**

## Owner's Policy of Title Insurance
ISSUED BY
**First American Title Insurance Company**
POLICY NUMBER
**5011400-2390965e**

# Owner's Policy

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
    (a) A defect in the Title caused by
        (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
        (ii) failure of any person or Entity to have authorized a transfer or conveyance;
        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
        (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
        (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
        (vii) a defective judicial or administrative proceeding.
    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

(Covered Risks Continued on Page 2)

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

**For Reference:**

**File #:** 19375

**Issued By:**

**Paramount Land Title of Knoxville, LLC**
8904 Sony Lane
Knoxville, TN 37923

(This Policy is valid only when Schedules A and B are attached)

This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form 5011400 (7-1-14)     Page 1 of 5

ALTA Owner's Policy of Title Insurance (6-17-06)

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i)  to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)   the occupancy, use, or enjoyment of the Land;
      (ii)  the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 66 of 127
PageID #: 73

1. **DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

  (i) The term "Insured" also includes

    (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

    (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

    (C) successors to an Insured by its conversion to another kind of Entity;

    (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

      (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

      (2) if the grantee wholly owns the named Insured,

      (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

      (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

  (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is Insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4. **PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS**

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters Insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not Insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as Insured, or to prevent or reduce loss or damage to the Insured. The Company may take any

appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the

Form 5011400 (7-1-14)        Page 4 of 5

Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the

Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 69 of 127
PageID #: 76

# First American Title Insurance Company

## SCHEDULE A

First American Title Insurance Company
1 First American Way
Santa Ana, California 92707

Agent's File No:    19375
Policy No.:         5011400-2390965e

Address Reference: Lots 1, 4, 50, & 53 The Glen at West Valley
                   Knoxville, Tennessee 37922

Date of Policy:    April 15, 2019

SI:            Owner's
Other Policy #:
RI Amount:

Premium:           $ 1,244.00

Amount of Insurance:   $ 250,000.00

1.  Name of Insured:
    Millstone Partners, LLC

2.  The estate or interest in the Land that is insured by this policy is:  Fee Simple

3.  Title is vested in:
    Millstone Partners, LLC

4.  The Land referred to in this policy is described as follows:
    **See Schedule A attached hereto and made a part hereof:**

Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, TN 37923

By: _____
PARAMOUNT LAND TITLE OF KNOXVILLE, LLC



**First American Title™**

**Owner's Policy of Title Insurance**

ISSUED BY

**First American Title Insurance Company**

POLICY NUMBER

**5011400-2390965e**

# Schedule B

File No.: 19375

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, (and the Company will not pay costs, attorneys' fees, or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrances violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. Any lien or right to a lien, for labor, services or materials imposed by law and not shown by the public records.

6. Any mineral or mineral rights leased, granted or retained by current or prior owners.

7. Taxes and assessments for the year 2019 and subsequent years, not yet due and payable.

**NOTE: Exception(s) numbered above is/are hereby deleted.**

1. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 201805090066334, in said Register's Office.

2. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 201805090066335, in said Register's Office.

3. Covenant for Maintenance of Stormwater Facilities dated September 25, 2018, of record in Instrument No. 201812050034820, in said Register's Office.

4. Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al, v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket # 196470-2, on any of the remaining lots and/or property shown on the plat of record in Instrument # 201812180037485, in the Register's Office for Knox County, TN.

5. All matters shown on plat of record in Instrument No. 201812180037485, in said Register's Office.

6. Subject to Modification of Deed of Trust in favor of Home Federal Bank of Tennessee dated April 15, 2019, recorded in Instrument No. 201904240062388, in the Register's Office for Knox County, Tennessee.

Form 6011447-B (7-1-14)

ALTA Owner's Policy of Title Insurance (6-17-06)
Tennessee - Schedule B
(19375.PFD/19375/14)

## First American Title Insurance Company

### Schedule A (Continued)

Agent's File No.: 19375

Policy No.: 5011400-2390965e

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lots 1,4,50, and 53 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID No. 132OC-001, 132OC-004, 132OC-049 and 132OC-052

BEING the same property conveyed to Millstone Partners, LLC, a Tennessee Limited Liability Company, from Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated April 15, 2019, recorded in Instrument No. 201904240062387, in the Register's Office for Knox County, Tennessee.

ALTA Owner's Policy (6-17-06)

(19375.PFD/19375/14)

*Nick McBride*
Register of Deeds
Knox County

132 OC - 001
132 OC - 004
132 OC - 049
132 OC - 052

This Instrument Prepared By:
Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, Tennessee 37923
File No. 19375

## WARRANTY DEED

THIS INDENTURE made this 15th day of April, 2019, between KNOX TL LOT ACQUISITION, LLC, a Tennessee Limited Liability Company, Party of the First Part, and MILLSTONE PARTNERS, LLC, a Tennessee Limited Liability Company, Party of the Second Part.

### WITNESSETH:

THAT SAID FIRST PARTIES, for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, and other good and valuable consideration, to them in hand paid by the Party of the Second Part, the receipt of which is hereby acknowledged, the Party of the First Part has granted, bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the Party of the Second Part, the real property described as follows, to-wit:

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lots 1, 4, 50, and 53 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID Nos. 132OC-001 (Lot 1), 132OC-004 (Lot 4), 132OC-049 (Lot 50), and 132OC-052 (Lot 53)

BEING the same property conveyed to Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated October 18, 2017, recorded October 20, 2017, and of record in Instrument No. 201710200024926, in the Register's Office for Knox County, Tennessee.

With the hereditaments and appurtenances thereto appertaining, hereby releasing all claims to homestead and dower therein. TO HAVE AND TO HOLD the same unto Second Party, his/hers/their heirs, successors and assigns forever AND said First Party, for themselves and their heirs, successors and assigns do hereby covenant that said Second Party, heirs, successors and assigns that they are lawfully seized in fee simple of the premises above conveyed and have full power, authority and right to convey the same, and that said premises are free from all encumbrances except taxes for the year 2019, which shall be prorated as of the date of closing; and

Any and all applicable restrictions, easements and building setback lines as are shown in the public records in said Register's Office and further to any matter and/or condition which would be disclosed by a current, accurate survey or

Knox County      Page: 1 of 3
REC'D FOR REC 04/24/2019 12:50:24PM
RECORD FEE: $18.00
M. TAX: $0.00 T. TAX: $925.00
2019042400062387

COUNTERSIGNED
KNOX COUNTY PROPERTY ASSESSOR

APR 2 4 REC'D

BY___ JOHN R. WHITEHEAD

inspection of the property herein described;

and that they will forever warrant and defend the said premises and title thereto against the lawful claims of all persons whomsoever.

Whenever in this instrument a pronoun is used it shall be construed to represent either the singular or plural, or the masculine, feminine or neuter gender, as the case may demand.

IN WITNESS WHEREOF, the said First Party hereunder has executed this instrument the day and year above written.

KNOX TL LOT ACQUISITION, LLC

By: SCOTT SMITH, Member

By: ERIC MOSELEY, Member

STATE OF TENNESSEE
COUNTY OF KNOX

Before me, the undersigned authority of the state and county mentioned, personally appeared SCOTT SMITH and ERIC MOSELEY with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such persons to be the MEMBERS of KNOX TL LOT ACQUISITION, LLC, the within named bargainor, a limited liability company and that such SCOTT SMITH and ERIC MOSELEY as such MEMBERS executed the foregoing instrument for the purpose therein contained, by personally signing the name of the limited liability company as such MEMBERS.

WITNESS my hand and official seal, this the 15th day of April, 2019.

Notary Public

My Commission Expires: _____

Page: 2 OF 3
2019042400062387

JESSICA A. LONG
TENNESSEE
NOTARY
PUBLIC
My Comm Exp.
Oct. 08, 2019
COUNTY OF KNOX

STATE OF TENNESSEE
COUNTY OF KNOX

I hereby swear or affirm that the actual consideration or true value of this transfer,
whichever greater is **$250,000.00.**

_____
Affiant

Subscribed and sworn to before me this 15th day of April, 2019.

Notary Public _____

My Commission Expires _____

RESPONSIBLE TAXPAYER:
Millstone Partners, LLC

104 Lardoak Dr.
Knoxville, TN 37922

OWNER AND PROPERTY ADDRESS:
Millstone Partners, LLC
Lots 1, 4, 50, and 53 of The Glen at West Valley
Knoxville, TN 37922

TAX ID: 132-049.21 (portion of)

Page: 3 OF 3
**2019042400062387**

# EXHIBIT H



### First American Title™

## Owner's Policy

## Owner's Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

POLICY NUMBER

## 5011400-2432461e

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

(Covered Risks Continued on Page 2)

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

### First American Title Insurance Company

*Dennis J. Gilmore*
Dennis J. Gilmore
President

*Jeffrey S. Robinson*
Jeffrey S. Robinson
Secretary

(This Policy is valid only when Schedules A and B are attached)

**For Reference:**

**File #:** 19594

**Issued By:**

**Paramount Land Title of Knoxville, LLC**
8904 Sony Lane
Knoxville, TN 37923

This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form 5011400 (7-1-14)    Page 1 of 5

ALTA Owner's Policy of Title Insurance (6-17-06)

Policy #: 5011400-2432461e

COVERED RISKS (Continued)

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

Form 5011400 (7-1-14)          Page 2 of 5

ALTA Owner's Policy of Title Insurance (6-17-06)

Case 3:21-cv-00374-JRG-DCP     Document 1-1     Filed 11/04/21     Page 78 of 127
PageID #: 85

## 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

  (i) The term "Insured" also includes

    (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

    (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

    (C) successors to an Insured by its conversion to another kind of Entity;

    (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

      (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

      (2) if the grantee wholly owns the named Insured,

      (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

      (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

  (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

## 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any

Case 3:21-cv-00374-JRG-DCP   Document 1-1   Filed 11/04/21   Page 79 of 127
PageID #: 86

appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.
To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of
(i) the Amount of Insurance; or
(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,
(i) the Amount of Insurance shall be increased by 10%, and
(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the

Case 3:21-cv-00374-JRG-DCP     Document 1-1     Filed 11/04/21     Page 80 of 127
PageID #: 87

Policy #: 5011400-2432461e

Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the

Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.

---

Form 5011400 (7-1-14)     Page 5 of 5

ALTA Owner's Policy of Title Insurance (6-17-06)

# First American Title Insurance Company

## SCHEDULE A

First American Title Insurance Company
1 First American Way
Santa Ana, California 92707

SI:                Owner's
Other Policy #:
RI Amount:

Agent's File No:    19594
Policy No.:         5011400-2432461e

Address Reference: Lots 5, 48 and 49 The Glen at West Valley
                   Knoxville, Tennessee 37922

Premium:            $ 1,058.00

Date of Policy:     May 8, 2019

Amount of Insurance:    $ 187,500.00

1.  Name of Insured:
    Millstone Partners, LLC

2.  The estate or interest in the Land that is insured by this policy is:  Fee Simple

3.  Title is vested in:
    Millstone Partners, LLC

4.  The Land referred to in this policy is described as follows:
    **See Schedule A attached hereto and made a part hereof:**

Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, TN 37923

By: _____
PARAMOUNT LAND TITLE OF KNOXVILLE, LLC

ALTA Owner's Policy (6-17-06)

(19594.PFD/19594/22)

 **First American Title™**

# Owner's Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Schedule B

POLICY NUMBER

**5011400-2432461e**

File No.: 19594

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, (and the Company will not pay costs, attomeys' fees, or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrances violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. Any lien or right to a lien, for labor, services or materials imposed by law and not shown by the public records.

6. Any mineral or mineral rights leased, granted or retained by current or prior owners.

7. Taxes and assessments for the year 2019 and subsequent years, not yet due and payable.

**NOTE: Exception(s) numbered above is/are hereby deleted.**

1. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 2018050090066334, in said Register's Office.

2. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 2018050090066335, in said Register's Office.

3. Covenant for Maintenance of Stormwater Facilities dated September 25, 2018, of record in Instrument No. 201812050034820, in said Register's Office.

4. Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al, v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket # 196470-2, on any of the remaining lots and/or property shown on the plat of record in Instrument # 201812180037485, in the Register's Office for Knox County, TN.

5. All matters shown on plat of record in Instrument No. 201812180037485, in said Register's Office.

6. Subject to Modification of Deed of Trust in favor of Home Federal Bank of Tennessee by Deed dated May 8, 2019, recorded in Instrument No. 201905100066088 in the Register's Office for Knox County, Tennessee.

Form 5011447-B (7-1-14)

ALTA Owner's Policy of Title Insurance (6-17-06)
Tennessee - Schedule B
(19594.PFD/19594/22)

# First American Title Insurance Company

## Schedule A(Continued)

Agent's File No.:  19594
Policy No.:  5011400-2432461e

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lots 5, 48, and 49 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID No. 132OC-005, 132OC-048 and 132OC-049

BEING the same property conveyed to Millstone Partners LLC, a Tennessee Limited Liability Company, from Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated May 8, 2019, recorded in Instrument No. 201905100066087, in the Register's Office for Knox County, Tennessee.

ALTA Owner's Policy (6-17-06)

(19594.PFD/19594/22)

*Nick McBride*
Register of Deeds
Knox County

1320C-005
1320C-047
1320C-048

This Instrument Prepared By:
Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, Tennessee 37923
File No. 19594

COUNTERSIGNED
KNOX COUNTY PROPERTY ASSESSOR

MAY 1 0 2019

JOHN R. WHITEHEAD
BY

## WARRANTY DEED

THIS INDENTURE made this 8th day of May, 2019, between KNOX TL LOT ACQUISITION, LLC, a Tennessee Limited Liability Company, Party of the First Part, and MILLSTONE PARTNERS, LLC, a Tennessee Limited Liability Company, Party of the Second Part.

### WITNESSETH:

THAT SAID FIRST PARTIES, for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, and other good and valuable consideration, to them in hand paid by the Party of the Second Part, the receipt of which is hereby acknowledged, the Party of the First Part has granted, bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the Party of the Second Part, the real property described as follows, to-wit:

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lots 5, 48, and 49 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID No. 132OC-005, 132OC-048 and 132OC-049

BEING the same property conveyed to Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated October 18, 2017, recorded October 20, 2017, and of record in Instrument No. 201710200024926, in the Register's Office for Knox County, Tennessee.

With the hereditaments and appurtenances thereto appertaining, hereby releasing all claims to homestead and dower therein. TO HAVE AND TO HOLD the same unto Second Party, his/hers/their heirs, successors and assigns forever AND said First Party, for themselves and their heirs, successors and assigns do hereby covenant that said Second Party, heirs, successors and assigns that they are lawfully seized in fee simple of the premises above conveyed and have full power, authority and right to convey the same, and that said premises are free from all encumbrances except taxes for the year 2019, which shall be prorated as of the date of closing; and

Any and all applicable restrictions, easements and building setback lines as are shown in the public records in said Register's Office and further to any matter and/or condition which would be disclosed by a current, accurate survey or

Knox County          Page: 1 of 3
REC'D FOR REC 05/10/2019 11:47:07AM
RECORD FEE: $18.00
TRANSFER TAX: $4593.75
201905100000

inspection of the property herein described;

and that they will forever warrant and defend the said premises and title thereto against the lawful claims of all persons whomsoever.

Whenever in this instrument a pronoun is used it shall be construed to represent either the singular or plural, or the masculine, feminine or neuter gender, as the case may demand.

IN WITNESS WHEREOF, the said First Party hereunder has executed this instrument the day and year above written.

KNOX TL LOT ACQUISITION, LLC

BY: SCOTT SMITH, Member

BY: ERIC MOSELEY, Member

STATE OF TENNESSEE

COUNTY OF KNOX

Before me, the undersigned Notary Public in and for the County and State aforesaid, personally appeared SCOTT SMITH and ERIC MOSELEY with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the MEMBERS, of KNOX TL ACQUISITION, LLC, a Tennessee Limited Liability Company, the within named bargainor, and that he/she as such MEMBERS, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of said Tennessee Limited Liability Company as said MEMBERS.

WITNESS my hand and official seal, this the 8th day of May, 2019.

Notary Public

My Commission Expires: 8-2-20

Page: 2 OF 3
2019051000066087

STATE OF TENNESSEE

COUNTY OF KNOX

I hereby swear or affirm that the actual consideration or true value of this transfer, whichever greater is $187,500.00.

_____
Affiant

Subscribed and sworn to before me this 8th day of May, 2019.



_____
Notary Public

My Commission Expires: __8 - 2 - 20__

RESPONSIBLE TAXPAYER:
Millstone Partners, LLC
104 Landoak Dr.
Knoxville, TN 37922

OWNER AND PROPERTY ADDRESS:
Millstone Partners, LLC
Lots 5, 48 and 49 The Glen at West Valley
Knoxville, TN 37922

TAX ID: 132OC-005 (lot 5); 132OC-048 (lot 48); 132OC-049

Page: 3 OF 3
2019051000066087

# EXHIBIT I

Case 3:21-cv-00374-JRG-DCP   Document 1-1   Filed 11/04/21   Page 88 of 127
PageID #: 95



## First American Title™

## Owner's Policy

# Owner's Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

POLICY NUMBER

**5011400-2432393e**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing Improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

(Covered Risks Continued on Page 2)

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

### First American Title Insurance Company

*[signature]*

Dennis J. Gilmore
President

*[signature]*

Jeffrey S. Robinson
Secretary

(This Policy is valid only when Schedules A and B are attached)

**For Reference:**

File #: 19696

**Issued By:**

Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, TN 37923

This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form 5011400 (7-1-14)    Page 1 of 5

ALTA Owner's Policy of Title Insurance (6-17-06)

COVERED RISKS (Continued)

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   If a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
       (i) to be timely, or
       (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
       (i) the occupancy, use, or enjoyment of the Land;
       (ii) the character, dimensions, or location of any improvement erected on the Land;
       (iii) the subdivision of land; or
       (iv) environmental protection;
       or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

ALTA Owner's Policy of Title Insurance (6-17-06)

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 90 of 127
PageID #: 97

## CONDITIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this policy mean:
   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.
   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
   (d) "Insured": The insured named in Schedule A.
   (i) The term "Insured" also includes
      (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
      (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
      (C) successors to an Insured by its conversion to another kind of Entity;
      (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
         (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
         (2) if the grantee wholly owns the named Insured,
         (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
         (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
   (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
   (e) "Insured Claimant": An Insured claiming loss or damage.
   (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
   (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
   (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
   (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
   (j) "Title": The estate or interest described in Schedule A.
   (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE**
   The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**
   The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4. **PROOF OF LOSS**
   In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS**
   (a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.
   (b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any

ALTA Owner's Policy of Title Insurance (6-17-06)

appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) **To Pay or Tender Payment of the Amount of Insurance.**

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and

expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) **To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.**

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the

ALTA Owner's Policy of Title Insurance (6-17-06)

Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the

### CONDITIONS (Continued)

Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.

ALTA Owner's Policy of Title Insurance (6-17-06)

# First American Title Insurance Company

## SCHEDULE A

First American Title Insurance Company
1 First American Way
Santa Ana, California 92707

Agent's File No:   19696
Policy No.:   5011400-2432393e

Address Reference: Lots 46 & 47 The Glen at West Valley
Knoxville, Tennessee 37922

Date of Policy:   June 4, 2019

SI:
Other Policy #:   Owner's
RI Amount:

Premium:   $ 869.00

Amount of Insurance:   $ 125,000.00

1.   Name of Insured:
   Millstone Partners, LLC

2.   The estate or interest in the Land that is insured by this policy is:  Fee Simple

3.   Title is vested in:
   Millstone Partners, LLC

4.   The Land referred to in this policy is described as follows:
   **See Schedule A attached hereto and made a part hereof:**

By:

Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, TN 37923

PARAMOUNT LAND TITLE OF KNOXVILLE, LLC

ALTA Owner's Policy (6-17-06)

(19696.PFD/19696/25)

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 94 of 127
PageID #: 101



| | | Owner's Policy of Title Insurance |
| First American Title™ | | ISSUED BY |
| | | First American Title Insurance Company |
| **Schedule B** | | POLICY NUMBER |
| | | **5011400-2432393e** |

File No.: 19696

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, (and the Company will not pay costs, attorneys' fees, or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrances violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. Any lien or right to a lien, for labor, services or materials imposed by law and not shown by the public records.

6. Any mineral or mineral rights leased, granted or retained by current or prior owners.

7. Taxes and assessments for the year and subsequent years, not yet due and payable.

**NOTE: Exception(s) numbered above is/are hereby deleted.**

1. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 201805090066334, in said Register's Office.

2. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 201805090066335, in said Register's Office.

3. Covenant for Maintenance of Stormwater Facilities dated September 25, 2018, of record in Instrument No. 201812050034820, in said Register's Office.

4. Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al, v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket # 196470-2, on any of the remaining lots and/or property shown on the plat of record in Instrument # 201812180037485, in the Register's Office for Knox County, TN.

5. All matters shown on plat of record in Instrument No. 201812180037485, in said Register's Office.

6. Subject to Modification of Deed of Trust in favor of Home Federal Bank of Tennessee dated May 28, 2019, recorded in Instrument No. 201906040071682 in the Register's Office for Knox County, Tennessee.

Form 5011447-B (7-1-14)

ALTA Owner's Policy of Title Insurance (6-17-06)
Tennessee - Schedule B
(19696.PFD/19696/25)

## First American Title Insurance Company

### Schedule A (Continued)

Agent's File No.:  19696
Policy No.:  5011400-2432393e

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lots 46 and 47 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID No. 132OC-045 and 132OC-046

BEING part of the same property conveyed to Milstone Partners LLC, a Tennessee Limited Liability Company, from Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated May 28, 2019, recorded in Instrument No. 201906040071681, in the Register's Office for Knox County, Tennessee.

ALTA Owner's Policy (6-17-06)

(19696.PFD/19696/25)

This Instrument Prepared By:
Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, Tennessee 37923
File No. 19696

COUNTERSIGNED
KNOX COUNTY PROPERTY ASSESSOR

JUN 0 4 2019

BY JOHN

*132OC045*
*132OC046*

*Nick McBride*
Register of Deeds
Knox County

## WARRANTY DEED

THIS INDENTURE made this 28th day of May, 2019, between **KNOX TL LOT ACQUISITION, LLC, a Tennessee Limited Liability Company**, Party of the First Part, and **MILLSTONE PARTNERS, LLC, a Tennessee Limited Liability Company**, Party of the Second Part.

### WITNESSETH:

THAT SAID FIRST PARTIES, for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, and other good and valuable consideration, to them in hand paid by the Party of the Second Part, the receipt of which is hereby acknowledged, the Party of the First Part has granted, bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the Party of the Second Part, the real property described as follows, to-wit:

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lots 46 and 47 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID No. 132OC-045 and 132OC-046

BEING part of the same property conveyed to Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated October 18, 2017, recorded October 20, 2017, and of record in Instrument No. 201710200024926, in the Register's Office for Knox County, Tennessee.

With the hereditaments and appurtenances thereto appertaining, hereby releasing all claims to homestead and dower therein. TO HAVE AND TO HOLD the same unto Second Party, his/hers/their heirs, successors and assigns forever AND said First Party, for themselves and their heirs, successors and assigns do hereby covenant that said Second Party, heirs, successors and assigns that they are lawfully seized in fee simple of the premises above conveyed and have full power, authority and right to convey the same, and that said premises are free from all encumbrances except taxes for the year 2019, which shall be prorated as of the date of closing; and

Any and all applicable restrictions, easements and building setback lines as are shown in the public records in said Register's Office and further to any matter and/or condition which would be disclosed by a current, accurate survey or

Knox County          Page: 1 of 3
REC'D FOR REC 06/04/2019 1:33:48PM
RECORD FEE: $18.00
M. TAX: $0.00 T. TAX: $462.50
201906040071681

inspection of the property herein described;

and that they will forever warrant and defend the said premises and title thereto against the lawful claims of all persons whomsoever.

Whenever in this instrument a pronoun is used it shall be construed to represent either the singular or plural, or the masculine, feminine or neuter gender, as the case may demand.

IN WITNESS WHEREOF, the said First Party hereunder has executed this instrument the day and year above written.

KNOX TL LOT ACQUISITION, LLC

BY: SCOTT SMITH, Member

BY: ERIC MOSELEY, Member

STATE OF TENNESSEE

COUNTY OF KNOX

Before me, the undersigned Notary Public in and for the County and State aforesaid, personally appeared **SCOTT SMITH and ERIC MOSELEY** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the **MEMBERS**, of **KNOX TL ACQUISITION, LLC**, a Tennessee Limited Liability Company, the within named bargainor, and that he/she as such **MEMBERS**, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of said Tennessee Limited Liability Company as said **MEMBERS**.

WITNESS my hand and official seal, this the 28th day of May, 2019.

Notary Public

My Commission Expires: _8-2-2_

Page: 2 OF 3
201906040071681

STATE OF TENNESSEE

COUNTY OF KNOX

I hereby swear or affirm that the actual consideration or true value of this transfer, whichever greater is **$125,000.00.**

_____
Affiant

Subscribed and sworn to before me this 28th day of May, 2019.

Notary Public

My Commission Expires: 8-2-20

RESPONSIBLE TAXPAYER:
Millstone Partners, LLC
104 Landoak Dr.
Knoxville, TN 37922

OWNER AND PROPERTY ADDRESS:
Millstone Partners, LLC
Lots 46 & 47 The Glen at West Valley
Knoxville, TN 37922

TAX ID: 132OC-045
        132OC-046

Page: 3 OF 3
2019060400071681

# EXHIBIT J

 **First American Title™**

## Owner's Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Owner's Policy

POLICY NUMBER

**5011400-2441774e**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

**(Covered Risks Continued on Page 2)**

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

*First American Title Insurance Company*

*[signature]*

Dennis J. Gilmore
President

*[signature]*

Jeffrey S. Robinson
Secretary

(This Policy is valid only when Schedules A and B are attached)

For Reference:

File #: 19874

Issued By:

**Paramount Land Title of Knoxville, LLC**
8904 Sony Lane
Knoxville, TN 37923

This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of its date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form 5011400 (7-1-14)    Page 1 of 5

ALTA Owner's Policy of Title Insurance (6-17-06)

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this policy mean:
   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.
   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
   (d) "Insured": The Insured named in Schedule A.
      (i) The term "Insured" also includes
         (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
         (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
         (C) successors to an Insured by its conversion to another kind of Entity;
         (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
            (1) If the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
            (2) if the grantee wholly owns the named Insured,
            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
      (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
   (e) "Insured Claimant": An Insured claiming loss or damage.
   (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
   (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
   (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
   (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental

protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
   (j) "Title": The estate or interest described in Schedule A.
   (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE**
   The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**
   The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4. **PROOF OF LOSS**
   In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS**
   (a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.
   (b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as Insured, or to prevent or reduce loss or damage to the Insured. The Company may take any

ALTA Owner's Policy of Title Insurance (8-17-06)

Case 3:21-cv-00374-JRG-DCP     Document 1-1     Filed 11/04/21     Page 103 of 127
PageID #: 110

appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.
To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and

expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of
   (i) the Amount of Insurance; or
   (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,
   (i) the Amount of Insurance shall be increased by 10%, and
   (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the

Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the

Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.

ALTA Owner's Policy of Title Insurance (6-17-06)

# First American Title Insurance Company

## SCHEDULE A

First American Title Insurance Company
1 First American Way
Santa Ana, California 92707

SI:       Owner's
Other Policy #:
RI Amount:

Agent's File No:   19874
Policy No.:       5011400-2441774e

Address Reference: 729 & 734 Valley Glen Boulevard
Knoxville, Tennessee 37922

Premium:    $ 869.00

Date of Policy:   July 3, 2019

Amount of Insurance:  $ 125,000.00

1. Name of Insured:
   Millstone Partners, LLC

2. The estate or interest in the Land that is insured by this policy is: Fee Simple

3. Title is vested in:
   Millstone Partners, LLC

4. The Land referred to in this policy is described as follows:
   See Schedule A attached hereto and made a part hereof:

Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, TN 37923

By: _____
PARAMOUNT LAND TITLE OF KNOXVILLE, LLC

ALTA Owner's Policy (6-17-06)

(19874.PFD/19874/9)

Case 3:21-cv-00374-JRG-DCP   Document 1-1   Filed 11/04/21   Page 106 of 127
PageID #: 113

|  First American Title™ | Owner's Policy of Title Insurance |
| --- | --- |
| | ISSUED BY |
| | First American Title Insurance Company |
| **Schedule B** | POLICY NUMBER |
| | 5011400-2441774e |

File No.: 19874

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, (and the Company will not pay costs, attorneys' fees, or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrances violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. Any lien or right to a lien, for labor, services or materials imposed by law and not shown by the public records.

6. Any mineral or mineral rights leased, granted or retained by current or prior owners.

7. Taxes and assessments for the year and subsequent years, not yet due and payable.

1. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 2018050090066334, in said Register's Office.

2. Subject to utility easement, dated April 11, 2018, of record in Instrument No. 2018050090066335, in said Register's Office.

3. Covenant for Maintenance of Stormwater Facilities dated September 25, 2018, of record in Instrument No. 2018120050034820, in said Register's Office.

4. Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al, v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket # 196470-2, on any of the remaining lots and/or property shown on the plat of record in instrument # 2018121800037485, in the Register's Office for Knox County, TN.

5. All matters shown on plat of record in Instrument No. 2018121800037485, in said Register's Office.

6. All matters shown on survey of Ryan Lynch, Surveyor.

7. Subject to Modification of Deed of Trust in favor of Home Federal Bank of Tennessee dated July 3, 2019, recorded in Instrument No. 2019070900002219 in the Register's Office for Knox County, Tennessee.

Form 5011447-B (7-1-14)

ALTA Owner's Policy of Title Insurance (6-17-06)
Tennessee - Schedule B
(19074.PFD/19874/9)

# First American Title Insurance Company

## Schedule A (Continued)

Agent's File No.:   19874
Policy No.:         5011400-2441774e

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lot 6 and Lot 45 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID No. 132OC-006 and 132OC-044

BEING the same property conveyed to Millstone Partners, LLC, a Tennessee Limited Liability Company, from Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated July 3, 2019, recorded in Instrument No. 201907090002218, in the Register's Office for Knox County, Tennessee.

*Nick McBride*
*Register of Deeds*
*Knox County*

13 2 0 C 0 0 6

This Instrument Prepared By:
Paramount Land Title of Knoxville, LLC
8904 Sony Lane
Knoxville, Tennessee 37923
File No. 19874

COUNTERSIGNED
KNOX COUNTY PROPERTY ASSESSOR

JUL 0 9 2019

BY_____ JOHN R. WHITEHEAD

## WARRANTY DEED

THIS INDENTURE made this 3rd day of July, 2019, between **KNOX TL LOT ACQUISITION, LLC, a Tennessee Limited Liability Company**, Party of the First Part, and **MILLSTONE PARTNERS, LLC, a Tennessee Limited Liability Company**, Party of the Second Part.

### WITNESSETH:

THAT SAID FIRST PARTIES, for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, and other good and valuable consideration, to them in hand paid by the Party of the Second Part, the receipt of which is hereby acknowledged, the Party of the First Part has granted, bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the Party of the Second Part, the real property described as follows, to-wit:

SITUATED in District No. Six (6) of Knox County, Tennessee, and without corporate limits, and being known and designated as all of Lot 6 and Lot 45 of The Glen at West Valley, Unit 1, as shown by map of the same of record in Instrument No. 201812180037485, in the Register's for Knox County, Tennessee, to which plat specific reference is hereby made for a more particular description.

DESIGNATED as Tax ID No. 132OC-006 and 132OC-044

BEING the same property conveyed to Knox TL Acquisition, LLC, a Tennessee Limited Liability Company, by Deed dated October 18, 2017, recorded in Instrument No. 201710200024926, in the Register's Office for Knox County, Tennessee.

With the hereditaments and appurtenances thereto appertaining, hereby releasing all claims to homestead and dower therein. TO HAVE AND TO HOLD the same unto Second Party, his/hers/their heirs, successors and assigns forever AND said First Party, for themselves and their heirs, successors and assigns do hereby covenant that said Second Party, heirs, successors and assigns that they are lawfully seized in fee simple of the premises above conveyed and have full power, authority and right to convey the same, and that said premises are free from all encumbrances except taxes for the year 2019, which shall be prorated as of the date of closing; and

Any and all applicable restrictions, easements and building setback lines as are shown in the public records in said Register's Office and further to any matter and/or condition which would be disclosed by a current, accurate survey or

Knox County       Page: 1 of 3
REC'D FOR REC 07/09/2019 11:54:00AM
RECORD FEE: $18.00
TAX: $148.50
201907090002010

inspection of the property herein described;

and that they will forever warrant and defend the said premises and title thereto against the lawful claims of all persons whomsoever.

Whenever in this instrument a pronoun is used it shall be construed to represent either the singular or plural, or the masculine, feminine or neuter gender, as the case may demand.

IN WITNESS WHEREOF, the said First Party hereunder has executed this instrument the day and year above written.

KNOX TL LOT ACQUISITION, LLC

BY: SCOTT SMITH, Member

BY: ERIC MOSELEY, Member

STATE OF TENNESSEE

COUNTY OF KNOX

Before me, the undersigned authority of the state and county mentioned, personally appeared **SCOTT SMITH AND ERIC MOSELEY** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such persons to be the **MEMBERS** of **KNOX TL LOT ACQUISITION, LLC** the within named bargainor, a limited liability company and that such **SCOTT SMITH AND ERIC MOSELEY** as such **MEMBERS** executed the foregoing instrument for the purpose therein contained, by personally signing the name of the corporation as such **MEMBERS.**

WITNESS my hand and official seal, this the 3rd day of July, 2019.

Notary Public

My Commission Expires

Page: 2 OF 3
20190709000 2218

JESSICA A. LONG
TENNESSEE
NOTARY
PUBLIC
My Comm Exp.
Oct 08,2019
OF KNOX COUNTY

STATE OF TENNESSEE

COUNTY OF KNOX

I hereby swear or affirm that the actual consideration or true value of this transfer, whichever greater is $125,000.00.

_____
Affiant

Subscribed and sworn to before me this 3rd day of July, 2019.

_____
Notary Public

My Commission Expires: _____

RESPONSIBLE TAXPAYER:
Millstone Partners, LLC
405 Montbrook Lane
Knoxville, TN 37919

OWNER AND PROPERTY ADDRESS:
Millstone Partners, LLC
729 & 734 Valley Glen Boulevard
Knoxville, TN 37922

TAX ID: 132OC-006 & 132OC-044

Page: 3 OF 3
201907090002218

# EXHIBIT K



**First American**
**Title Insurance Company**

*CLAIMS SERVICES*
*CENTRAL DIVISION*

Jeffrey R. Young
Claims Counsel
Central Division
Direct 720.264.8704

jyoung@firstam.com

October 31, 2019

*VIA E-MAIL*

Howard & Howard
Attn: Lewis S. Howard, Jr.
4820 Old Kingston Pike
Knoxville, TN 37919
lewis@howardhowardlaw.com

RE:    First American Title Insurance Company Claim # TN-1909204688
       First American Title Insurance Company Policy # 5011400-2390985e ("Policy")
       Insured: Millstone Partners, LLC ("Insured")
       <u>Alexander Detrana, et al., v. Charles Edward Daniel et al.,</u> (Case No. 196470-2)
       ("Action")

Dear Mr. Howard:

This letter is in response to the title claim submitted to First American Title Insurance Company ("FATIC") by the Insured Millstone Partners, LLC. As you have informed FATIC that you represent the Insured FATIC will respond directly to you. The Insured has alleged that it has built homes on the lots insured by the Policy and are unable to close upon these lots purportedly due to the existence of the Action creating a cloud on the title to the lots.

On April 15, 2019 FATIC issued to the Insured an ALTA Owner's Policy (06-17-06) providing coverage for the insured amount of $250,000 insuring the property referred to in Schedule A Paragraph 4 ("Property").

Be advised that a title insurance policy is a contract of indemnification which provides coverage for certain specified losses subject to the terms, conditions, exclusions and exceptions found in the policy. The claim asserted the below Covered Risk as the basis for the acceptance of the same:

FIRST AMERICAN TITLE INSURANCE COMPANY

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST

8310 S. Valley Hwy., Ste., 130, Englewood, CO 80112
720.264.8700 ▼ *TOLL FREE* ▼ 800.999.3470 *FAX* 720.264.8800

Case 3:21-cv-00374-JRG-DCP    Document 1-1    Filed 11/04/21    Page 113 of 127
PageID #: 120

AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

    2. Any defect in or lien or encumbrance on the Title.

Notwithstanding the abovementioned affirmative coverage, in reviewing this matter the Schedule B Exceptions from Coverage of the policy must also be considered in the analysis of the claim, and certain applicable provisions are as follows:

SCHEDULE B
EXCEPTIONS FROM COVERAGE

This Policy does not insure against loss or damage, and the Company will no pay costs, attorneys' fees, or expenses that arise by reason of:

    5.     Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al., v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket #196470-2, on any of the remaining lots **and/or property shown on the plat of recorded in instrument #2018912180037485,** in the Register's Office for Knox County, TN. (*Emphasis added*).

FATIC initially responded to another claim made by the Insured related to another title policy and different lots and you responded to FATIC asserting that the above exception related only to the remaining lots and was not an exception that applied to the Property. Upon reviewing the entire abovementioned Exception, it clearly applies to **all** lots shown on the recorded Plat, and the Property consist of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots". As this exception specifically excepts all matters associated with the Action in Schedule B Paragraph 5 above, your claim is denied and FATIC will not pay any costs, attorneys' fees or expense associated with the Action in any manner, and this claim matter will be closed.

Additionally, the Exclusions from Coverage and the Conditions contained in the Policy must also be considered and pertinent provisions are as follows:

EXCLUSIONS FROM COVERAGE

3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

CONDITIONS

9. LIMITATION OF LIABILITY

    (c) The Company shall not be liable for loss or damage to the Insured for liability

2

voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

FATIC is aware that the Insured has reached a settlement with the Plaintiffs in the Action on August 21, 2019 and that the Action was dismissed on September 3, 2019. Since the Insured has voluntarily reached a settlement with the Plaintiffs any matters related to the Action or settlement, including but not limited to, costs, attorney's fees and settlement payments made by the Insured to the Plaintiffs, are matters deemed to have been assumed and agreed to by the Insured and FATIC has no liability for the same and will not reimburse the Insured for any such costs, attorney's fees and settlement payments in accordance with Paragraph 3(a) of the Exclusions from Coverage and 9(c) of the Conditions above.

FATIC's position in this matter is based on the current available facts and is not intended to be exclusive. FATIC retains the right to supplement its response in the matter and to deny this claim, should any additional facts or information come to light. The reference to any particular provision of the policy herein shall not be construed as a waiver or release of any other term or condition of the above referenced policy not contained in this letter. If you are in possession of any additional facts, legal theories, case law, documentation or any other pertinent information that may alter FATIC's position on this matter, please forward the same to my attention for immediate review.

Yours truly,

Jeffrey R. Young

3

# EXHIBIT L



**First American**
**Title Insurance Company**

Jeffrey R. Young
Claims Counsel
Central Division
Direct 720.264.8704

jyoung@firstam.com

*CLAIMS SERVICES*
*CENTRAL DIVISION*

October 31, 2019                                                  *VIA E-MAIL*

Howard & Howard
Attn: Lewis S. Howard, Jr.
4820 Old Kingston Pike
Knoxville, TN 37919
lewis@howardhowardlaw.com

RE:   First American Title Insurance Company Claim # TN-1909204686
      First American Title Insurance Company Policy # 5011400-2432393e ("Policy")
      Insured: Millstone Partners, LLC ("Insured")
      <u>Alexander Detrana, et al., v. Charles Edward Daniel et al.</u>, (Case No. 196470-2)
      ("Action")

Dear Mr. Howard:

This letter is in response to the title claim submitted to First American Title Insurance
Company ("FATIC") by the Insured Millstone Partners, LLC. As you have informed FATIC
that you represent the Insured FATIC will respond directly to you. The Insured has alleged that
it has built homes on the lots insured by the Policy and are unable to close upon these lots
purportedly due to the existence of the Action creating a cloud on the title to the lots.

On June 4, 2019 FATIC issued to the Insured an ALTA Owner's Policy (06-17-06) providing
coverage for the insured amount of $125,000 insuring the property referred to in Schedule A
Paragraph 4 ("Property").

Be advised that a title insurance policy is a contract of indemnification which provides
coverage for certain specified losses subject to the terms, conditions, exclusions and exceptions
found in the policy. The claim asserted the below Covered Risk as the basis for the acceptance
of the same:

FIRST AMERICAN TITLE INSURANCE COMPANY

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM
COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST

AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

2. Any defect in or lien or encumbrance on the Title.

Notwithstanding the abovementioned affirmative coverage, in reviewing this matter the Schedule B Exceptions from Coverage of the policy must also be considered in the analysis of the claim, and certain applicable provisions are as follows:

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

This Policy does not insure against loss or damage, and the Company will no pay costs, attorneys' fees, or expenses that arise by reason of:

5. Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al., v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket #196470-2, on any of the remaining lots **and/or property shown on the plat of recorded in instrument #2018912180037485**, in the Register's Office for Knox County, TN. (*Emphasis added*).

FATIC initially responded to another claim made by the Insured related to another title policy and different lots and you responded to FATIC asserting that the above exception related only to the remaining lots and was not an exception that applied to the Property. Upon reviewing the entire abovementioned Exception, it clearly applies to all lots shown on the recorded Plat, and the Property consist of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots". As this exception specifically excepts all matters associated with the Action in Schedule B Paragraph 5 above, your claim is denied and FATIC will not pay any costs, attorneys' fees or expense associated with the Action in any manner, and this claim matter will be closed.

Additionally, the Exclusions from Coverage and the Conditions contained in the Policy must also be considered and pertinent provisions are as follows:

## EXCLUSIONS FROM COVERAGE

3. Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

## CONDITIONS

9. LIMITATION OF LIABILITY

(c) The Company shall not be liable for loss or damage to the Insured for liability

2

voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

FATIC is aware that the Insured has reached a settlement with the Plaintiffs in the Action on August 21, 2019 and that the Action was dismissed on September 3, 2019. Since the Insured has voluntarily reached a settlement with the Plaintiffs any matters related to the Action or settlement, including but not limited to, costs, attorney's fees and settlement payments made by the Insured to the Plaintiffs, are matters deemed to have been assumed and agreed to by the Insured and FATIC has no liability for the same and will not reimburse the Insured for any such costs, attorney's fees and settlement payments in accordance with Paragraph 3(a) of the Exclusions from Coverage and 9(c) of the Conditions above.

FATIC's position in this matter is based on the current available facts and is not intended to be exclusive. FATIC retains the right to supplement its response in the matter and to deny this claim, should any additional facts or information come to light. The reference to any particular provision of the policy herein shall not be construed as a waiver or release of any other term or condition of the above referenced policy not contained in this letter. If you are in possession of any additional facts, legal theories, case law, documentation or any other pertinent information that may alter FATIC's position on this matter, please forward the same to my attention for immediate review.

Yours truly,

Jeffrey R. Young

3

# EXHIBIT M



**First American**
**Title Insurance Company**

Jeffrey R. Young
Claims Counsel
Central Division
Direct 720.264.8704

jyoung@firstam.com

*CLAIMS SERVICES*
*CENTRAL DIVISION*

October 31, 2019                                              ***VIA E-MAIL***

Howard & Howard
Attn: Lewis S. Howard, Jr.
4820 Old Kingston Pike
Knoxville, TN 37919
lewis@howardhowardlaw.com

**RE:     First American Title Insurance Company Claim # TN-1909204687**
**First American Title Insurance Company Policy # 5011400-2432461e ("Policy")**
**Insured: Millstone Partners, LLC ("Insured")**
**Alexander Detrana, et al., v. Charles Edward Daniel et al., (Case No. 196470-2)**
**("Action")**

Dear Mr. Howard:

This letter is in response to the title claim submitted to First American Title Insurance Company ("FATIC") by the Insured Millstone Partners, LLC. As you have informed FATIC that you represent the Insured FATIC will respond directly to you. The Insured has alleged that it has built homes on the lots insured by the Policy and are unable to close upon these lots purportedly due to the existence of the Action creating a cloud on the title to the lots.

On June 4, 2019 FATIC issued to the Insured an ALTA Owner's Policy (06-17-06) providing coverage for the insured amount of $187,500 insuring the property referred to in Schedule A Paragraph 4 ("Property").

Be advised that a title insurance policy is a contract of indemnification which provides coverage for certain specified losses subject to the terms, conditions, exclusions and exceptions found in the policy. The claim asserted the below Covered Risk as the basis for the acceptance of the same:

FIRST AMERICAN TITLE INSURANCE COMPANY

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM
COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST

AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

2. Any defect in or lien or encumbrance on the Title.

Notwithstanding the abovementioned affirmative coverage, in reviewing this matter the Schedule B Exceptions from Coverage of the policy must also be considered in the analysis of the claim, and certain applicable provisions are as follows:

SCHEDULE B
EXCEPTIONS FROM COVERAGE

This Policy does not insure against loss or damage, and the Company will no pay costs, attorneys' fees, or expenses that arise by reason of:

5. Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al., v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket #196470-2, on any of the remaining lots **and/or property shown on the plat of recorded in instrument #20189121800037485**, in the Register's Office for Knox County, TN. (*Emphasis added*).

FATIC initially responded to another claim made by the Insured related to another title policy and different lots and you responded to FATIC asserting that the above exception related only to the remaining lots and was not an exception that applied to the Property. Upon reviewing the entire abovementioned Exception, it clearly applies to all lots shown on the recorded Plat, and the Property consist of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots". As this exception specifically excepts all matters associated with the Action in Schedule B Paragraph 5 above, your claim is denied and FATIC will not pay any costs, attorneys' fees or expense associated with the Action in any manner, and this claim matter will be closed.

Additionally, the Exclusions from Coverage and the Conditions contained in the Policy must also be considered and pertinent provisions are as follows:

EXCLUSIONS FROM COVERAGE

3. Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

CONDITIONS

9. LIMITATION OF LIABILITY

(c) The Company shall not be liable for loss or damage to the Insured for liability

2

voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

FATIC is aware that the Insured has reached a settlement with the Plaintiffs in the Action on August 21, 2019 and that the Action was dismissed on September 3, 2019. Since the Insured has voluntarily reached a settlement with the Plaintiffs any matters related to the Action or settlement, including but not limited to, costs, attorney's fees and settlement payments made by the Insured to the Plaintiffs, are matters deemed to have been assumed and agreed to by the Insured and FATIC has no liability for the same and will not reimburse the Insured for any such costs, attorney's fees and settlement payments in accordance with Paragraph 3(a) of the Exclusions from Coverage and 9(c) of the Conditions above.

FATIC's position in this matter is based on the current available facts and is not intended to be exclusive. FATIC retains the right to supplement its response in the matter and to deny this claim, should any additional facts or information come to light. The reference to any particular provision of the policy herein shall not be construed as a waiver or release of any other term or condition of the above referenced policy not contained in this letter. If you are in possession of any additional facts, legal theories, case law, documentation or any other pertinent information that may alter FATIC's position on this matter, please forward the same to my attention for immediate review.

Yours truly,

Jeffrey R. Young

3

# EXHIBIT N



**First American**
**Title Insurance Company**

*CLAIMS SERVICES*
*CENTRAL DIVISION*

Jeffrey R. Young
Claims Counsel
Central Division
Direct 720.264.8704

jyoung@firstam.com

October 31, 2019

*VIA E-MAIL*

Howard & Howard
Attn: Lewis S. Howard, Jr.
4820 Old Kingston Pike
Knoxville, TN 37919
lewis@howardhowardlaw.com

RE:   **First American Title Insurance Company Claim # TN-1909204685**
      **First American Title Insurance Company Policy # 5011400-2441774e ("Policy")**
      **Insured: Millstone Partners, LLC ("Insured")**
      **<u>Alexander Detrana, et al., v. Charles Edward Daniel et al.</u>, (Case No. 196470-2)**
      **("Action")**

Dear Mr. Howard:

This letter is in response to the title claim submitted to First American Title Insurance Company ("FATIC") by the Insured Millstone Partners, LLC. As you have informed FATIC that you represent the Insured FATIC will respond directly to you. The Insured has alleged that it has built homes on the lots insured by the Policy and are unable to close upon these lots purportedly due to the existence of the Action creating a cloud on the title to the lots.

On July 3, 2019 FATIC issued to the Insured an ALTA Owner's Policy (06-17-06) providing coverage for the insured amount of $125,000 insuring the property referred to in Schedule A Paragraph 4 ("Property").

Be advised that a title insurance policy is a contract of indemnification which provides coverage for certain specified losses subject to the terms, conditions, exclusions and exceptions found in the policy. The claim asserted the below Covered Risk as the basis for the acceptance of the same:

FIRST AMERICAN TITLE INSURANCE COMPANY

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST

8310 S. Valley Hwy., Ste., 130, Englewood, CO 80112
720.264.8700 ▼ *TOLL FREE* ▼ 800.999.3470 *FAX* 720.264.8800

AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

2. Any defect in or lien or encumbrance on the Title.

Notwithstanding the abovementioned affirmative coverage, in reviewing this matter the Schedule B Exceptions from Coverage of the policy must also be considered in the analysis of the claim, and certain applicable provisions are as follows:

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

This Policy does not insure against loss or damage, and the Company will no pay costs, attorneys' fees, or expenses that arise by reason of:

5.     Any loss or damage, if any, resulting from the impact of the litigation styled as Alexander Detrana, et al., v. Charles Edward Hamilton, Thomas J. Overton, Knox TL Lot Acquisition, LLC and S&E Properties, LLC, bearing Knox County Chancery Court docket #196470-2, on any of the remaining lots **and/or property shown on the plat of recorded in instrument #2018912180037485**, in the Register's Office for Knox County, TN. (*Emphasis added*).

FATIC initially responded to another claim made by the Insured related to another title policy and different lots and you responded to FATIC asserting that the above exception related only to the remaining lots and was not an exception that applied to the Property. Upon reviewing the entire abovementioned Exception, it clearly applies to **all** lots shown on the recorded Plat, and the Property consist of lots shown on the Plat; therefore, FATIC disagrees with your assertion that it only applies to the other "remaining lots". As this exception specifically excepts all matters associated with the Action in Schedule B Paragraph 5 above, your claim is denied and FATIC will not pay any costs, attorneys' fees or expense associated with the Action in any manner, and this claim matter will be closed.

Additionally, the Exclusions from Coverage and the Conditions contained in the Policy must also be considered and pertinent provisions are as follows:

## EXCLUSIONS FROM COVERAGE

3. Defects, liens, encumbrances, adverse claims, or other matters

   (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

## CONDITIONS

9.  LIMITATION OF LIABILITY

   (c) The Company shall not be liable for loss or damage to the Insured for liability

2

voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

FATIC is aware that the Insured has reached a settlement with the Plaintiffs in the Action on August 21, 2019 and that the Action was dismissed on September 3, 2019. Since the Insured has voluntarily reached a settlement with the Plaintiffs any matters related to the Action or settlement, including but not limited to, costs, attorney's fees and settlement payments made by the Insured to the Plaintiffs, are matters deemed to have been assumed and agreed to by the Insured and FATIC has no liability for the same and will not reimburse the Insured for any such costs, attorney's fees and settlement payments in accordance with Paragraph 3(a) of the Exclusions from Coverage and 9(c) of the Conditions above.

FATIC's position in this matter is based on the current available facts and is not intended to be exclusive. FATIC retains the right to supplement its response in the matter and to deny this claim, should any additional facts or information come to light. The reference to any particular provision of the policy herein shall not be construed as a waiver or release of any other term or condition of the above referenced policy not contained in this letter. If you are in possession of any additional facts, legal theories, case law, documentation or any other pertinent information that may alter FATIC's position on this matter, please forward the same to my attention for immediate review.

Yours truly,

Jeffrey R. Young

3